Haston, Judge.'
 

 The plaintiff brought an action of debt against the administrators
 
 of John Armstrong, Thomas Armstrong, John Hodges, William Hodges,
 
 and
 
 Robert Campbell,
 
 to recover the amount of a
 
 dormant judgment
 
 which had been rendered in tbeir bebalf against tlic intestates of these defendants. The matters in controversy were embraced in the issue joined on the jileas of payment and set off. Upon these issues the jury returned a verdict ascertaining the. balance due on the judgment, subject to the opinion of the Court upon a case agreed. This case presented the question whether, upon the facts agreed, the defendants were, or were not entitled to a further credit of the sum of
 
 $9S0,
 
 which was claimed by them, but not allowed in the verdict_ Upon this question the decision of the Court below
 
 was
 
 in favor of the defendants, and a judgment having been rendered for the plaintiffs for the residue of the sum mentioned in the verdict after deduction of this credit, they appealed to this court,
 

 The material facts in relation to the disputed credit
 
 *522
 
 arc briefly these. The late
 
 John Armstrong
 
 for many years before bis death kept an open account with the plaintiffs as his bankers. lie died on the 27"th July 1827, and on the face of this account there was then a balance in his favor of the aforesaid sum of S930. About a fortnight before'his death, he was called on by the plaintiffs to account with, and pay over to them moneys which the Sheriff of fhe county had paid over to him as clerk of the county court, for the plaintiffs. He promised to do so, but died without accounting or making payment, The sum due to the plaintiffs on this account was S2-100. Besides this debt, he also owed jointly with the persons herein before named, the large judgment which is the foundation of this action. Neither of these debts was charged in the running account. On the
 
 19th
 
 September 1827, bis administrator applied at the Bank, presenting a check in favor of himself for the sum of §930, and domauded payment thereof. The officers of the institution refused to pay this check, and claimed the right to apply the balance appearing due to bis intestate to the satisfaction
 
 pro tanto
 
 of what bis intestate owed, because of the money of the Bank received from the Sheriff. The administrator/immediately thereupon commenced an action of
 
 assumpsit
 
 against the Bank, and on the trial thereof was called and nonsuited. He renewed the action, and upon the trial was again nonsuited. He then issued a third writ which has not yet been executed on the plaintiffs. On the 22d day of October 1827, the plaintiffs instituted an action on the official bond of
 
 Armstrong,
 
 which was-tried at the same term with this suit, and obtained a judgment for the residue of the money so received by him as clerk after a deduction of the sum of §930, which they applied in part discharge of that claim. This application of the said sum was not assented to, hut on the trial was protested against by the administrator. On the 23d of July 1829, the present suit was brought.
 

 A debt due t* one of several defendants by the plaintiff, cannot be pleaded as a setoff.
 

 It is clear that the disputed credit cannot be allowed ™ , ... as a set off, waiving ail other objections to it as such, there is a want of that mutuality between the debt de- ", manded and the debt which the defendants opposed to it,
 
 *523
 
 which is indispensable under the statute of set off. A which is due from a plaintiff to one defendant only, cannot be set off to a joint demand against two or more defendants.
 

 It remains to be considered whether upon the facts agreed, the law pronounces that this sum of $980 has been paid in part satisfaction of the judgment which is the. foundation of this action. Whatever claim the late
 
 John Armstrong
 
 had against the plaintiffs, it arose not from
 
 special
 
 but from
 
 general
 
 deposits. He had not placed in the custody of the officers of the Bank, money in bags or boxibs to be kept distinct from the funds of the Bank and to be returned to him in
 
 specie.
 
 Had this been the case the identical money so deposited, would have remained his property in their-hands as his bailees. If lost or destroyed without fault of the depository the loss would be that of the depositor. If not so lost or destroyed,.he would have had a remedy against the plaintiffs upon an improper refusal to return it, by detinue or trover,as for an unlawful detention of conversion of his proper goods. The deposits were general.
 

 They consisted, (as appears from the account made a part of this case,) either of money, or of the notes of the Bank, or of notes of other Banks, or of the checks of other dealers upon the Bank, or of the proceeds
 
 of bills or
 
 notes discounted
 
 ñ
 
 r him. They were incorporated into themase of the funds of the plaintiffs, became their property, and entitled him to a general credit for the amount thereof in account. Upon a settlement, the plaintiffs were bound honestly to account with him for that amount, and faithfully to pay over any balance which on such settlement should be found rightfully due. They were undoubtedly entitled to charge him with
 
 whatever sums they
 
 had paid to him, or to his checks to others, and with such other disbursements and demands, as by the agreement of the parties, or by the nature of their dealings, or by the known usages of the institution, or by the law of the land, were proper debits in such a running account. Had the plaintiffs the right as against
 
 Armstrong,
 
 upon his refusal to pay over to them monies which he had received to their
 
 *524
 
 Use, to charge this in the account to the extent of his funds in Bank ? 'There can be no question but if the Bank had paid off a note or acceptance of his, payable at the Bank, this would have constituted a proper debit in the account. It is not to be doubted also, but that they had a right to apply his funds in their hands to the payment of any note or acceptance of his,held by them.
 
 (Rogers v Ladbroke, 1 Bingham
 
 93, 8
 
 Eq. C. L. Rep.
 
 260.) Upon the examination of the account referred to, we find that the very first debit is,
 
 “June 3d
 
 1819
 
 to note
 
 180,” and that regularly afterwards, so long as he obtained discounts, that is to say,’up to April 22d 1827, his notes are charged off in account, as they become due, or as his means in Bank by discounts or otherwise become adequate to meet them. We see also that according to the course of dealing between the pax-ties, he is charged in account with other money demands, as for example,
 
 “
 
 Januai-y 27th 1827,
 
 Brown
 
 &
 
 Cameron’s judgment
 
 $5610 25.” From the nature of this account, as an open running account of the cash transactions of the parties, embracing a variety of receipts and payments, debits and credits, from the manner of their dealing with each other, and upon common law principles wholly independent of the statute of set off, we think that either has a right to
 
 retain
 
 for, or to
 
 charge in account
 
 against the othei*, money l-eceived by the latter for the use of the former, so that the balance thus ascertain* ed shall be the
 
 true debt,
 
 and the parties neither di-iven to cx-oss actions nor obliged to set of, against each other, as for mutual unconnected demands.
 
 (Dale
 
 v
 
 Sollet,
 
 4
 
 Bur.
 
 2143,
 
 Green
 
 v
 
 Farmer, Ib.
 
 2221.) But if the -decision of the question x-ested upon this point we should consider it further
 
 before
 
 we
 
 come to
 
 a
 
 definitive
 
 determination. We can decide it more satisfactorily to ourselves upon other grounds which I proceed to state.
 

 It is not questioned that if
 
 Armstrong
 
 had demanded payment from the Bank of this apparent balance in his favox-, the Bank could refuse upon the ground of the set off which they had against him, because of their money received from the Sheriff, and had he. attempted by ac
 
 *525
 
 tion of
 
 assumpsit
 
 to enforce a recovery of this balance, cou^ have barred his recovery by pleading this set; off
 
 As Armstrong’s
 
 administrator succeeded precisely to the rights of bis intestate, whatever was the rule of right as between the plaintiffs and the intestate, became the rule also between the administrator and the plaintiffs. But while this is conceded,it is denied by the defendants that the plaintiffs could apply this balance as
 
 a payment
 
 on account of this particular demand, without the assent of
 
 Armstrong
 
 or his administrator, because the two demands were
 
 unconnected,
 
 originating and continuing in distinct transactions, forming opposite debts, recoverable by separate and opposing actions, and not permitted to balance each other, except by a judgment of court rendered with respect to them when
 
 brought forward
 
 under the defence of set off. If this bo indeed the rule which governs the transaction, and by the force of which the plaintiffs Cannot apply the money due to
 
 Armstrong’s
 
 estate, as .a payment of the demand they have against it for the money
 
 Armstrong
 
 held of theirs, we are unable to see how under the same rule these defendants can, without the assent of the plaintiffs, apply the former demand as a payment of
 
 the judgment
 
 upon which they are sued. There is
 
 at least
 
 as little connexion between the disputed item and
 
 this judgment,
 
 as between that item, and the demand against
 
 Armstrong
 
 for the money paid him. In fact there is much less, because as we have seen,the two last arc not even mutual demands, and cannot be opposed to each other upon the plea of set off by the defendants.
 

 The argument by which the defendants endeavour
 
 to
 
 sustain this their
 
 asserted right, is understood
 
 to be this: the money standing on the running account to the credit of
 
 Armstrong
 
 at his death, was the money of his administrator, and he had the right to apply it as he pleased. The refusal of the Bank to let him have the control of this money,gave him an election to consider it as cash paid to the Bank.
 
 There
 
 were two demands ofthe plaintiffs against his intestate, and of course against the dministrator as the representative of that intestate.
 
 A
 
 
 *526
 
 debtor malting a payment, has the right to apply the sum paid, to either of the demands of the creditor, and the debtor here, by the plea of payment to this action, lias directed the application to this debt. Wo have felt ourselves bound to consider this argument attentively, not only, because of the respect due to the able counsel who argued it, but because of the still greater respect due to the decision which is supposed to sanction it, and which the appeal brings before us for review. The result of that examination has not been to satisfy us of the correctness of the argument.
 

 Tlio bataneo of a general cash account, duo by a Bank to a depositor, is a
 
 debt
 
 which may ha set off to any claim of the bank against the depositor, and is not
 
 money
 
 which the latter may apply at his election, to cither of those claims.
 

 However for some purposes the phrase may be allowed, that the balance on the running account in favour of
 
 Armstrong
 
 at his death, was
 
 the money
 
 of his administrator, we have seen that legally speaking, it was
 
 not his money. Such
 
 balance was evidence that the plaintiffs
 
 owed that amount
 
 to the administrator* and a refusal to pay it upon demand, unless such refusal were made for sufficient reason, rendered the plaintiffs liable to the administrator, because oF a breach of the
 
 assump-sit
 
 which the law infers from such indebtedness. Ifthe claim of the plaintiffs against the administrator were so connected with this balance appearing due on open account, that both were items in one continued dealing, then the refusal
 
 to
 
 pay was rightful, because in truth there was nothing due. If however these mutual claims were unconnected, the plaintiffs had a right to refuso payment, because they had a proper set-off. A debtor who makes an actual payment with his own money lias a right to direct its application, because
 
 it is his money,
 
 and be alone lias the legal control over it. But a
 
 creditor
 
 has no
 
 right to
 
 direct his debtor to apply the sum due him to any one of two cross demands which that debtor may have against the creditor. The money in the hands of the debtor is yet
 
 his
 
 money,
 
 he
 
 has the legal control of it — its
 
 specific
 
 application cannot be ordered by the creditor, and the right of opposing a set-off, and if so, of selecting the set-off which be will thus oppose, is the right of the debtor. We do not therefor^ see that the refusal of the Bank to favor the administra»
 
 *527
 
 tor’s check, gave him a right to regard the
 
 sum checked
 
 for, still less the whole apparent balance, as so much money then paid to the Bank.
 

 If this view be correct it is unnecessary to pursue the train of reasoning further. A fallacy we think has insinuated itself into it at its commencement, which unavoidably leads to error in the result. But if the administrator could be regarded as having the right to consider-the money standing to the credit of his intestate as a
 
 payment
 
 to the Bank, and of directing its application— when ought he, and when did he direct the application ? The judgment of the Court is, that it was thus applied oh the 19th September 1827, because of the refusal of -the Bank then to pay his check, and of the election declared by him at the time of the plea pleaded.
 
 The
 
 record shews that the plea of payment was first put in at June Term 1832. There appears no
 
 plea
 
 referring distinctly to this disputed item until at the term of trial, when the administrator of
 
 John Armstrong
 
 pleads fully administered, and “gives notice of a set off for g930.” It is perfectly clear, that
 
 in fact
 
 the administrator did not direct the application of this disputed item as a payment on the 19th of September 1827. He presented a check for $902 payable to
 
 himself.
 
 The Bank refused the check, because they claimed the right of retaining for the satisfaction of one of their demands. It was not a controversy for which of the two demands the Bank should retain, but whether it might,retain for their claim against
 
 John Armstrong,
 
 or should not, retain at all.
 

 The application of this balance to the judgment debt was not urged, nor so far as we see, thought of by either. If the refusal of the Bank gave
 
 him
 
 the right to direct the application, he did not then exercise that right. Instead of imputing this amount to either of the demands of the plaintiffs, he required it tó bo paid over to himself. It is not stated as a fact, nor is there any fact set forth from which it can be inferred, that the administrator treated this as a
 
 payment
 
 by him, or by his intestate, or claimed that it should be so regarded for several years afterwards. He immediately instituted an
 
 *528
 
 action to recover this amount as a debt due him from the plaintiffs, and after repeated nonsuits, he to this day,perseveres in claiming it as a debt. If the occurences at the time the check was refused, either of themselves, or connected with the election at the time when, payment was pleaded to this action, can convert the amount withheld by the Bank, into a payment, then it must be regulated by the law applicable to such a payment, that is to say, a payment by a debtor to a creditor having two demands, without any direction as to its appropriation. In such case, the rule is settled, that tiic creditor may then make such appropriation as ho pleases.' "VVe are saved from the necessity of enquiring how the law would have applied it, in case both the debtor and creditor had at the time declined to make an appropriation, (an enquiry which in many cases is not free from perplexity,) because the election of the plaintiffs, was expressly announced at the moment, and has ever since been invariably adhered to.
 

 I am instructed to declare the judgment of this court, that the court below erred, in rendering a judgment in behalf of the plaintiffs for the sum of eighteen hundred and fifty five dollars and eighty cents — that the said judgment ought to be reversed on account of this error — and that the plaintiffs are entitled to have judgment pursuant to the verdict of the jury, for the sunt of three thousand, one hundred and thirty-six dollars and fourteen cents, and their costs in the court below, with interest on *82314 50 cents, from the time of the rendition of the judgment in the Superior Court of Cumberland, until paid.The appellants are also entitled to recover their costs in this court, to be taxed by the clerk.
 

 Per Curiam — Judgment accordingly.