THE CITIZENS' BANK OF GARNETT v. CONSTANCE BOWEN AND PRESTON BOWEN.

SET-OFF; *Loan Secured by Mortgage by Husband and Wife on Homestead; Insolvency of Husband; Proceeds of Loan Deposited to Wife's Credit.* Where B., who was insolvent, was indebted to a bank in the sum of $1,800, and obtained a loan of a stranger for $1,650 on his own promissory note, secured by a mortgage on B.'s homestead, the title to which was in his name, and which mortgage was signed by the wife, and the proceeds of the loan to the amount of $1,283.14 were deposited in the bank to the credit of the wife without any consideration and in fraud of the rights of the creditors of B., and thereafter the deposit was checked out by the wife till reduced to $1,161.64, *held*, that in the action by the

wife to recover such deposit, in which action the husband was a party, the bank had the right to set off its claim against B. over against the deposit, and to have a judgment against B. for the balance of the indebtedness remaining unpaid after the credit of the deposit thereon.

### *Error from Anderson District Court.*

ACTION, brought by *Constance Bowen*, as plaintiff, against *The Citizens' Bank of Garnett*, as defendant, to recover money which the petition alleged had been deposited by the plaintiff with the defendant, as a banker, and subject to call. At the September Term, 1877, of the district court, the said plaintiff recovered a judgment against the defendant; and the said *Constance Bowen* and her husband, *Preston Bowen*, who had entered his appearance as a party defendant in the action, obtained a final order against said defendant bank. New trial denied, and the defendant brings the case here. The facts are sufficiently stated in the opinion.

*A. Bergen,* for plaintiff in error :

1. The answer was sufficient, and there was evidence proving, or at least tending to prove, its every material allegation. The court therefore erred in taking the case from the jury, by instructing them to find a verdict for the plaintiff.

2. The evidence shows that the note upon which the money sued for was obtained, was the individual note of Preston Bowen. If it had been obtained upon his note alone, the money would certainly have been his, so that he could not, while insolvent, make a valid gift of it, as against existing creditors.

3. But to secure the note, he and his wife made a mortgage on their homestead, of which the title was in Preston Bowen. This fact made the money none the less his, for his wife had no estate in the land. (*Jenness v. Cutler,* 12 Kas. 516 ; *City of Leavenworth v. Stille,* 13 Kas. 539.)

We claim that the making of the mortgage invested him with no power to give away the money, to the injury of his creditors. It is not a sale of the homestead, or a part

thereof, or an interest therein. Although the wife's signature was necessary to the validity of the mortgage, yet this case differs widely from one in which no note is given, or where there is no personal indebtedness, but only a charge upon the land or a certain sum to be taken out of it. In the present case the note is the principal thing, the mortgage only an incident, a security to the note, creating a lien, but vesting no estate, either before or after condition broken. A personal judgment may be rendered against the maker of the note; his other property may be taken for the debt; his administrator may be required to pay it out of the assets of his estate; it may be allowed as a claim against his estate in bankruptcy. He may sell the mortgaged property, and the title will pass by his conveyance, and, under proper covenants of warranty, the grantee could exhaust all of the grantor's other property in freeing the premises from the mortgage.

The court appears to have proceeded upon the theory that the money sued for was the proceeds of the sale of an interest in the land, or so much taken out of the land. We submit that our statute, in making a clean sweep of the old theories as to mortgages, set them aside, so that not only the debtor, but the creditor also, may avail himself of the changes; that the estate of the mortgagee has ceased to exist, as to all persons and under all circumstances. (*Chick v. Willetts*, 2 Kas. 385; *Lichty v. McMartin*, 11 Kas. 565.)

4. To hold the law to be as claimed by the plaintiff below, would open a wide door to fraud. If a person greatly indebted could borrow money on his individual note, and give as part or additional security a mortgage on his homestead, and have the lawful right to turn the money over to his wife, so that it would be her absolute property, beyond the reach of his creditors, he could then pay the note with other property, retain the homestead in addition to the money borrowed, and thus perpetrate a gross fraud upon his creditors. In our view, such a construction of the homestead-exemption law would be an extension of its scope, and would give the wife

more rights than the law expresses or intends, and more than may be deduced from the decisions yet made. In such case, the husband and wife could hold, in defiance of creditors, the proceeds of the husband's note, their right to the homestead, subject to the lien, with whatever ability to pay the husband might possess, and all the power or permission contained in the law to have the indebtedness paid out of his other property, and thus free the homestead. "Homestead laws should not be extended by construction. The general rule is, that all the property of a debtor is applicable to the payment of his debts. The effect of the exemption laws is to create exceptions to this general rule. Hence a·debtor, claiming an exemption of any portion of his property, must bring himself strictly within the terms of the law allowing exemptions, otherwise the general rule must take its course." (*Ward v. Huhn*, 16 Minn. 159.)

5. It is a fraud for a debtor in failing circumstances to give his property to his wife, and such gift, as against previous creditors, will not be sustained, and is utterly void. (1 Story Eq. Jur., § 355, *et seq.;* Gen. Stat. 504, § 2.)

6. The right of set-off exists against the persons who are the equitable owners of the demand in suit. *Miller v. Florer*, 15 Ohio St. 148; Seney's New Code, p. 181, §§ 20, 21; Waterman on Set-Off, p. 251, §§ 218, 219; 4 U. S. Dig. (1st series), p. 288, § 119.

7. The plaintiff below claimed that the bank is precluded from asserting that the property was Preston Bowen's, or that the transfer to Constance Bowen was not valid, because an officer of the bank had suggested to Preston Bowen that the money be deposited and the cattle bought in his wife's name, in order that they should be more secure from other creditors. "A fraudulent conveyance made by the advice and at the request of a creditor of the grantor, is not valid as against that creditor." 6 U. S. Dig. (1st series), p. 677, § 99, citing *Waterhouse v. Benton*, 5 Day (Conn.), 136.

*Benson & Parkinson,* for Constance Bowen, defendant in error:

It is claimed, because the money was borrowed by Dr. Bowen, upon his note, secured by mortgage on lands to which he held the title, that the fund so borrowed became subject to the payment of his (Dr. Bowen's) debts; that the deposit thereof in the name of his wife was a legal fraud, and the money was still his and subject to the payment of his debts. This proposition cannot be maintained, in view of the facts of this particular case.

*First:* The mortgaged property was a homestead, and as such was exempt from the payment of debts. It could not be alienated or incumbered without the joint consent of husband and wife. It is a matter of entire indifference to the creditor whether the title is in the husband's or wife's name. Toward it, the creditor's eye need never turn. It is an element which may never enter into his calculations in his efforts to collect his debt. (*Monroe v. May,* 9 Kas. 466, 476; *Mitchell v. Milhoan,* 11 Kas. 617.)

The greater must include the less; if the wife had the power to give or withhold her consent to the mortgage absolutely, she certainly might give such consent upon any condition she saw fit to make. In this case it appears that she consented to the mortgage upon condition that the funds should be placed in her custody — given to her, if you please — and of such gift the creditor could never complain, since he could have no interest in the homestead, and if the whole had been given away, he could not complain. If Dr. Bowen had conveyed the entire homestead to his wife, his creditors would have had no cause of complaint, since in doing so no property would be removed from the reach of their claims. (*Monroe v. May,* supra.) If he could thus give her the entire property, how can it be said with reason that he could not give her a part, or the proceeds of a part, or a part of the proceeds? Manifestly, the principle must be the same in either case.

*Second:* But suppose, as claimed by the bank, that this mortgage was made under the provisions of the written agreement already referred to, and that such agreement is valid: then, in that case, the principal was never to be applied to Dr. Bowen's indebtedness, but was to be kept intact, and only certain future "profits" to be applied on the debt. Upon what construction of the contract, or by what rule of law or equity, does the bank claim now the right to appropriate the entire fund? The president of the bank himself suggested the deposit of the money in his bank, saying: "It is the proceeds of a homestead, and that fact should never be lost sight of."

This statement Mr. Lanter did not deny, and it is therefore a fact in the case. The matter then stands thus: Having induced Mrs. Bowen to sign a mortgage upon the homestead to raise a fund to be invested in cattle on the farm, and only the profits to be appropriated to her husband's debt at the bank, the bank officers persuade her to deposit the money with them, and then claim that the money is legally the husband's; that placing it in the wife's name in the bank, is a fraud on the bank, and so they seize the entire fund and off-set the same against the husband's note. Having done this, the bank next comes into a court of equity, and asks that the transaction be approved as a matter of good conscience!

The marvelous audacity thus displayed is fitly supplemented by the charming frankness of the cashier, who testifies: "I suggested that it (the fund in question) should be deposited with us in Mrs. Bowen's name, *so that his* (the Doctor's) *other creditors could not get hold of it.*" Counsel now say, that by following the cashier's suggestion, Mrs. Bowen is guilty of a fraud! With such a ready teacher, ought the bank to complain if Mrs. Bowen has proven an apt scholar?

If the transaction be fraudulent, the Citizens' bank is in no situation to profit by it. It cannot take advantage of its own wrong. It is estopped from denying that the money is hers, and that it was bound to honor her check therefor.

The opinion of the court was delivered by

HORTON, C. J.: This was an action instituted in the district court of Anderson county by Constance Bowen, as plaintiff, against the Citizens' bank of Garnett, as defendant, to recover $1,161.64, and interest, which the petition alleged had been deposited by the plaintiff with the bank, as a banker, subject to call. The bank filed its answer, denying this allegation, and many of the other averments of the petition, and alleged that the money sued for was the property of Preston Bowen, the husband of Constance Bowen; that he, being insolvent, had deposited it in the bank to the credit of his wife without any consideration; and that he was indebted to the bank upon a promissory note of $1,800, with interest from July 1st, 1875, and then overdue, which was an amount greater than the deposit. This answer further alleged that before and at the time of making the deposit, Preston Bowen was, and had continued to be, indebted to the bank in the sum of $1,800, and interest; that the money sued for had been deposited in the bank under the following written agreement:

"This agreement, made between Doc. P. Bowen and his wife and the Citizens' bank of Garnett, witnesseth: That whereas, Doc. P. Bowen is indebted to said Citizens' bank of Garnett in the sum of $1,800, due the 1st day of July, 1876, now said P. Bowen and his wife agree to and with the said Citizens' bank to procure a loan of $2,000 or more on their farm, a homestead in Anderson county, Kansas; and he and his wife shall invest the proceeds of said loan in yearlings and two-year-old cattle, and give to the said Citizens' bank of Garnett, when bought, a chattel mortgage on all the cattle so bought, to secure the payment of said amount of $1,800, reserving to themselves, however, the right and amount of the cost price of said cattle to himself and wife. The growth or increase in value of said cattle above cost price is the only interest to be secured by the said mortgage, and the cost price of said cattle shall be reinvested whenever taken or received by P. Bowen and wife in the class of cattle above mentioned, by P. Bowen and wife; and the same, when purchased, shall be mortgaged to the Citizens' bank in like manner as above,

until said amount of $1,800 and interest is fully satisfied by said P. Bowen and wife.

"Witness the hands of the parties hereto this 1st day of December, 1875.          P. BOWEN.
                                        CONSTANCE BOWEN.
                                        CITIZENS' BANK OF GARNETT,
                                                    By J. T. LANTER, *Pres.*"

And that the money was to be kept, drawn out and used only in accordance with said agreement, and that said Preston and Constance Bowen had neglected and refused so to apply it. The answer asked that Preston Bowen be made a party to the suit, and that, upon the final hearing, the said sum of $1,161.64 should be applied as a credit and set-off against an equal sum of the note of Preston Bowen to the bank, and that judgment be rendered in favor of the bank against him for the balance remaining due upon the note after the $1,161.64 had been credited thereon.

Preston Bowen entered his appearance, and filed his pleading admitting the allegations of the petition, and denying generally, and without verification, the allegations of the answer of the bank.

Constance Bowen replied, also denying, without verification, the allegations of the bank's answer.

The following facts were admitted or proved on the trial. On December 1, 1875, Preston Bowen made his note to the bank for $1,800, payable July 1st, 1876, with twelve per cent. interest from maturity, and at the same time he and his wife executed with the bank the written agreement above set forth. At the time of the execution of this agreement, and for many years prior thereto, the plaintiff below and her husband, Preston Bowen, and their family, had lived on a certain 160-acre farm in Anderson county, which was their homestead, and was so referred to in the agreement. The title to this land was in the husband. On February 1st, 1876, Preston Bowen executed his note to the Phœnix Mutual Life Insurance Company, of Hartford, Conn., for $1,650, payable in five years from date, and this note was secured by a mortgage of like date on the said homestead in Anderson

county, which mortgage was duly signed by both Preston and Constance Bowen. The money on this note thus secured was obtained from the said life insurance company through Henry Bogen, a loan agent. On February 26th, 1876, he deposited $1,283.14 of the money so raised upon the note and mortgage with the bank, under the instructions of Mrs. Bowen, had that amount passed to her credit, and the usual pass-book of a depositor was then given her. From that time up to May 17th, 1876, the checks of Mrs. Bowen were duly honored, and her account debited therewith in the usual course of banking business. On the 6th of January, 1877, this pass-book was returned to the bank, the various checks entered on the debit side, and the account stated therein by the cashier, showing a balance in favor of Mrs. Bowen of $1,161.64. On the 17th day of January, 1877, she demanded this amount of the bank, and payment was refused. On the 23d of January, 1877, this action was brought in the court below. It was admitted that the husband, Preston Bowen, was insolvent. After the introduction of the evidence, the counsel for the bank asked the following instructions:

1. That if the money sued for in this action was the money of Preston Bowen when it was deposited with said bank, the jury should find for the defendant, the Citizens' bank of Garnett.

2. That if the money deposited was obtained upon a mortgage of Preston Bowen's land, made by Preston Bowen and Constance Bowen, and a note made by Preston Bowen and secured by said mortgage, that they should find for the defendant.

3. That the proceeds of a note made by a husband and secured by a mortgage made upon the homestead by husband and wife, are subject to be applied to the payment of the husband's debts previously existing, and the husband cannot lawfully place such proceeds out of the reach of previous creditors by a gift of such proceeds to his wife, or by placing the same in her hands without any valid consideration.

The court refused to give these instructions, or any one of them, and against the objections and exceptions of the bank, instructed the jury that the said Constance Bowen was enti-

tled to a verdict for the sum of $1161.64, with interest thereon
at seven per cent. from January 17th, 1877, and directed them
to find a verdict accordingly against the bank.

We may dismiss the within agreement of Dec. 1st, 1875,
set up in the answer of the bank, with the single remark that
it does not necessarily affect the case nor figure in the final
result.   The court below was right in rejecting all considera-
tion of such agreement as any defense under the pleadings to
the action of Mrs. Bowen, but not right in peremptorily in-
structing the jury to return her a verdict for the sum sued
for.   The money obtained on the note of February 1st, 1876,
belonged to the maker, Preston Bowen.   Its payment was
secured by a mortgage on land in his own name, and the fact
that such real estate was a homestead, and that it was neces-
sary for the wife to sign the mortgage to make it valid, did
not make the proceeds of the note the property of such wife.
The husband was the principal, was solely liable on the note.
The mortgage was a mere security creating a lien upon the
property, but vesting no estate whatever.   In one sense the
wife might be said to be the surety for her husband, but in a
very remote and attenuated sense. (*Jenness v. Cutler*, 12 Kas.
500.)   When the note should be paid the lien would cease to
exist.   Nor would the proceeds of a note thus executed be
exempt from the payment of the debts of the maker thereof,
because the same was secured by a mortgage on a homestead.
There is no theory of the law upon which any such principle
can be sustained.   If the rule were otherwise, then the hus-
band could execute his notes, secure the same by a mortgage
on his homestead, purchase other lands with the proceeds,
which would be exempt or belong to his wife, and after pay-
ment of the note from the proceeds of his lands, again issue
other notes likewise secured, and repeat the operation, and
thus forever cover up his property from the just claims of
honest creditors, under the plea that the security for his notes
was given on a homestead, which was signed by the wife.
This result would lead to absurd consequences, and is an un-
warranted construction of the homestead provisions of the

state. Viewing the money obtained on the note and mortgage as the personal property of Preston Bowen, any gift of it to his wife or the deposit of it in the bank to her credit without any consideration when he was insolvent, was fraudulent as against creditors and transferred no right or title. The money on deposit really belonged to Preston Bowen. He was a party to the action below, and the bank ought to have been allowed to set off his indebtedness to it as prayed for in its answer. The fact that Mrs. Bowen was the nominal owner of the deposit is no obstacle to the claim of the bank, because such ownership under the circumstances was utterly void, and of no effect as against the husband's creditors. Under § 1, ch. 62, Gen. Stat. 562, it is clearly evident that the real and personal property of a married woman received by her as a gift from her husband is still liable for his debts. The deposit of the money in the name of the wife being a mere covinous cloak to secrete it from an insolvent's creditors, it was liable for such insolvent's debts. There being no element of estoppel in the conduct of the bank or its officers precluding it from contesting the claim of Mrs. Bowen to the deposit, nor from having its set-off allowed, the judgment of the district court must be reversed, and the cause remanded for a new trial.

All the Justices concurring.

# JANUARY TERM, 1879.

### PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, } Associate Justices.
Hon. DAVID J. BREWER,