GEORGE W. LONG v. HUGH BARNES and others.

*Marriage—Deed—Survivorship—Married Women.*

1. The living together of a man and woman (formerly slaves) as husband and wife after the passage of the act of 1866, validating marriages between such persons, is conclusive evidence of the parties' consent to the contract. *State* v. *Whitford,* 86 N. C., 636, approved.

2. An estate in fee to husband and wife ; *Held* that they take *per tout, et non per my*, and upon the death of either, the estate goes to the survivor.

4. Married women have no greater estates, by operation of the constitution of 1868, than those conveyed by the terms of the deed under which they derive title ; nor are the properties and incidents belonging to estates changed by that instrument.

(*State* v. *Adams*, 65 N. C., 537 ; *State* v. *Whitford*, 86 N. C., 636 ; *Motley* v. *Whitmore*, 2 Dev. & Bat., 337 ; *Todd* v. *Zachary*, Bus. Eq., 286, cited and approved.)

EJECTMENT tried at Spring Term, 1882, of CALDWELL Superior Court, before *Avery, J.*

The defendants admitted in their answer that they were in possession of the land described in the complaint, and alleged that they claimed through John Barnes and were the owners of an undivided half of the land, and tenants in common with the plaintiff.

The plaintiff offered in evidence a deed from John Barnes to Thomas Barnes and Ailsy Barnes, dated January 14, 1869 ; also a deed from Thomas Barnes to the plaintiff, dated November 25, 1879.

Thomas Barnes and Ailsy Barnes were slaves up to their emancipation in 1865, and belonged to John Barnes. Ailsy died before November, 1879, and Thomas is still living.

It was in evidence that Thomas and Ailsy Barnes lived together as man and wife, recognizing each other and recognized by others as man and wife, while they were slaves and after their emancipation in 1865, and until Ailsy died, and that the defendants were their children, born while they were cohabiting as slaves.

No record of the marriage between them had ever been made in compliance with the act of 1866, ch. 40, §5.

The only issue submitted to the jury was, " Was Thomas Barnes, the grantor of the plaintiff, and Ailsy Barnes, the mother of the defendants, husband and wife on the 13th day of January, 1869."

The defendants' counsel asked the court to instruct the jury:

1. That the legislature had not the power to make parties man and wife without their free consent, and that unless they gave their consent to the same in the manner pointed out by the statute, the statute is a nullity as to them, and they were never man and wife.

2. That if the parties were man and wife without complying with the statute, the change in the rights of married women by the constitution (Art. X, §6,) had the effect to change the construction heretofore placed by the courts upon a conveyance to husband and wife jointly, and that Ailsy Barnes took by the deed from John Barnes an undivided half of the land in controversy, which descended to the defendants, who were admitted to be her heirs at law.

The court refused to give the instructions asked, and the defendants excepted.

The court charged the jury:

1. That if they were satisfied by a preponderance of testimony that Thomas Barnes and Ailsy Barnes were slaves prior to the year 1865; were emancipated during that year, and while slaves and up to the time when the act of March 20th, 1866, took effect, cohabited together, recognized each other, and were recognized by others, as man and wife, then in contemplation of law they were man and wife from the time such cohabitation began.

2. That the acknowledgment provided for in section five, chapter 40, of the act of 1866, is, when entered by the clerk in conformity to the requirements of the statute, *prima facie* evidence of a marriage; but it is not essential to the validity of a marriage contract between freed persons, who were cohabiting together as husband and wife when the act took effect, that such acknowledgment should have been made or entered.

3. That if Thomas and Ailsy Barnes were husband and

wife, then by the deed of January 13th, 1869, the land in controversy vested in Thomas and Ailsy as joint tenants, and upon the death of Ailsy, the whole estate survived to Thomas, and his deed would pass the entire interest in the land to the plaintiff.

Defendants' counsel excepted to the charge.

The jury responded in the affirmative to the issue submitted to them, and there was judgment in favor of the plaintiff. Appeal by defendants.

No counsel for the plaintiff.
*Mr. M. L. McCorkle,* for defendant's.

ASHE, J. The first exception taken by the defendants' counsel was to the refusal of His Honor to charge the jury, " that the legislature had no power to make parties man and wife without their free consent, and unless they gave their consent to the same in the manner pointed out by the statute, the statute is a nullity."

The ruling of His Honor upon this instruction as asked was not erroneous. The .first branch of the instruction is answered by the fact that Thomas Barnes and Ailsy Barnes continued to live together for several years after the passage of the act of 1866, as man and wife, recognizing each other and recognized by others as standing in that relation to each other. This was certainly conclusive evidence of a *free consent,* and meets the constitutional objection. And the latter branch of the instruction has been settled by the decisions of this court in the cases of *State* v. *Adams,* 65 N. C., 537, and *State* v. *Whitford,* 86 N. C., 636, where it was held that a record of the acknowledgment of cohabitation was not essential to the consummation of marriage, and a marriage constituted by the operation of the act could not be avoided by a failure to have the acknowledgment entered of record ; and that the purpose of the legislature in requir-

ing the record to be made, was only to perpetuate the evidence of the marriage for the benefit of the issue of such marriage.

The next instruction asked—that conceding the marriage of Thomas and Ailsy to be valid without a record of their cohabitation, the constitution had the effect to take from an estate granted to husband and wife, the right of survivorship, was properly refused. The section of the constitution referred to reads: " The real and personal property of any female in this state, acquired before marriage, and all property real and personal to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised or bequeathed, and with the written consent of her husband conveyed by her as if she were unmarried." Const. Art. X, § 6.

We do not believe it was the intention of the framers of the constitution by adopting this provision in that instrument, to effect such a radical change in the construction of deeds and wills as that contended for by the defendants' counsel. We are of the opinion its sole purpose was to restrict the marital rights of husbands in the property of their wives, by investing all the real and personal property they may acquire in their own right, with the attributes of " separate estate," but never had in contemplation to change the established rules of construction, or destroy or change the *properties* and *incidents* belonging to estates, or to give to married women any greater estates than are conveyed to them by the terms of the instruments under which they derive title.

Thomas and Ailsy then being husband and wife, the deed executed by John Barnes to them dated January 13th, 1869, vested in them a joint estate, not in joint-tenancy, for they were neither properly joint-tenants, nor tenants in

common, for being considered as one person in law they could not take the estate by moities, but took it by entireties,—*per tout, et non per my*—and consequently when Ailsy died the whole estate remained to Thos. Barnes the survivor.  2 Blackstone, 182; *Motley* v. *Whitemore*, 2 Dev. & Bat., 537; *Todd* v. *Zackary*, Busb. Eq., 286.

The exception to His Honor's charge is not sustainable. His instructions to the jury were substantially correct as applied to the facts of the case and are supported by the decision in *Whitford's case supra,* and the authorities there cited.

There is no error.  The judgment of the superior court is therefore affirmed.

No error.　·　　　　　　　　　　　　　　　Affirmed.