MRS. M. S. MOORE v. GREENVILLE BANKING AND TRUST COMPANY.

(Filed 24 September, 1919.)

1. **Husband and Wife — Lands — Entirety — Sale—Severalty—Intent—Conversion—Estates..**

Where the husband and wife own the title to lands in entirety and sell the same, and it is shown that they divided the proceeds with the intent of holding, and held the same, in severalty, the unity of the title is severed, and the husband's part thereof can be subjected to payment of the claims of his creditors. As to whether the fact of sale alone would have this effect, *quere?*.

2. **Same—Fraud—Evidence—Trials.**

A husband and wife held the title to lands in entirety and sold the same and the husband divided the proceeds of the sale and deposited the same to his wife's credit in two banks. The wife claimed the ownership of both deposits, claiming that the purchase of the land was made from her separate estate, and by mistake of the draftsman it was conveyed to her husband and herself in entirety, and there was evidence tending to show that the husband had theretofore been perfectly solvent but at the time in question was insolvent, and that he had told his creditor, the defendant in the action, "that all his property was in his wife's name, and that he could whistle for his money," and there was other evidence of fraud: *Held,* evidence sufficient to sustain a verdict to the effect that the proceeds of the sale were held by them in severalty, and that the transaction as to the deposit in defendants' bank was in fraud of the rights of the creditor.

3. **Verdict—Interpretation—Evidence—Instructions.**

The verdict of the jury must be construed in the light of the evidence and of the charge.

4. **Appeal and Error—Assignments of Error—Error Specified.**

Assignments of error will not be considered on appeal when not properly taken by the appellant according to the rules of the Supreme Court concerning them.

5. **Husband and Wife — Lands—Entirety—Conversion—Fraud—Evidence—Appeal and Error—Estates.**

Where the determining questions in a suit by a creditor of the husband are, whether the proceeds of the sale of land formerly held by him and his wife in entirety were thereafter held in severalty and half thereof deposited in the defendant bank in the wife's name, in fraud of the defendant's right to offset the amount by that of the male defendant's note due and held by the defendant, testimony of the male defendant as to his partnership with a third person, or whether their grantee of the land had assumed the debt, without defendant's consent, or as to why the male plaintiff had not paid the note, is irrelevant and was properly excluded.

6. **Banks and Banking—Deposits—Offset—Actions—Fi. Fa.**

A bank may offset the amount due by its depositor from the amount of his deposit, or this may be pleaded as a counterclaim by the bank, in

a suit against it to recover the deposit, as a bill or action in the nature of a *fi. fa.*

CLARK, C. J., concurring.

ACTION tried before *Guion, J.,* and a jury, at May Term, 1919, of PITT.

The action was brought by the feme plaintiff against the defendant to recover of it an alleged deposit of two thousand and ninety and 56-100 dollars, and to recover damages for refusal of defendant to honor plaintiff's check. (This last cause of action, however, has been abandoned.) The facts out of which this controversy arose may be briefly stated as follows:

Prior to the fall of 1915, plaintiff's husband, who is a party to this action, and W. L. Hall were doing a partnership business in the town of Greenville, and engaged in buying and selling farm products. The firm carried a banking account with defendant, and for the purpose of securing overdrafts executed to defendant company their note for two thousand dollars, appearing in the record. W. M. Moore signed this note as surety.

Thereafter said firm and the said W. M. Moore, as surety, became indebted to defendant bank in the sum of two thousand ninety and 56-100 dollars. The firm became financially distressed, failed, and refused to pay the note. Hall was absolutely insolvent; Moore refused to pay, stating "that all of his property was in his wife's name, and the bank could whistle for its money."

Thereupon the credit of the firm having been given upon the bona fide belief of the bank in Moore's solvency, the bank investigated Moore's financial condition. This investigation disclosed that Moore had had considerable property, the title to all of which had become vested in his wife, the plaintiff; it found that plaintiff and her husband were the joint owners of a valuable residential lot in the town of Greenville, which they had purchased in 1908, and which they sold in the fall of 1915 for $12,000 cash, six thousand dollars of which was deposited by W. M. Moore in the National Bank of Greenville in the name of the plaintiff, and the other six thousand dollars was deposited in the defendant bank by said W. M. Moore in the name of the plaintiff.

The bank, finding that Moore did not intend to pay his obligation as surety and otherwise, sought advice as to how it might protect itself from loss, and was advised that upon the voluntary conversion of said real estate into cash the estate by entirety was dissolved; that its common-law incidents no longer applied; that one-half of the purchase price received for said lot, to wit, six thousand dollars, became the sole property of W. M. Moore and liable for his debts; that Moore had no legal right to give the plaintiff all of the said purchase price and thereby

defeat the payment of his joint and individual liability to the bank. Thereupon the bank, under date of 1 February, 1916, notified the plaintiff of her status at the bank, and of the indebtedness of her husband, and of his refusal to meet his obligation, and further notified her that in order to protect itself from loss it would charge her account with an amount sufficient to pay the indebtedness due by said W. M. Moore, the bank contending that the plaintiff knowingly permitted Moore to perpetrate a fraud upon the bank, and was a party thereto in so far as she accepted all of said purchase price received for said lot in furtherance of the plan of W. M. Moore to defeat his liability to the bank; and thereupon the bank charged the amount of said note and interest to said fund received by virtue of the sale of said lot as aforesaid, and the plaintiff was duly notified that the bank would not honor any check drawn on said account which reduced the amount of said account below the sum of two thousand ninety and 56-100 dollars. Upon receipt of this notice the plaintiff drew a check on defendant bank which it refused to pay, and which if it had paid would have reduced the balance in her name below the amount of defendant's claim; and thereupon the feme plaintiff brought this action to recover said deposit of the bank. Thereafter W. M. Moore, her husband, was made a party as appears in the record.

When the case was first heard there was a mistrial, and thereafter the trial judge rendered judgment in favor of the plaintiff upon the pleadings, from which judgment the defendant appealed. This Court, on the appeal, granted a new trial, and the case, upon the second hearing, having been heard upon its merits, the result was that the jury answered all of the issues against the plaintiff, finding by its verdict that the money in defendant bank was the sole property of W. M. Moore, and placed by him in plaintiff's name for the purpose of defrauding the bank. Plaintiff appealed.

*F. G. James & Son and W. F. Evans for plaintiff.*
*Albion Dunn and Skinner & Whedbee for defendants.*

WALKER, J., after stating the case: The case was before this Court at the Spring Term, 1917, and the decision below was reversed. It is reported in 173 N. C., at p. 180. A careful review of that opinion clearly shows that the governing principles of law involved in this litigation have already been passed upon by the Court favorably to the defendant. Especially is this so when we take into consideration the full force of the following excerpt from our opinion, found on the bottom of page 183: "In the present instance, as we have seen, the claim of defendant bank is against both the partnership and the individual members who

endorsed its note as surety, and under the doctrine recognized and approved by these and like authorities (*supra*) on the subject, if the facts should be established as alleged and contended for by the defendant bank, the right of appropriation, to the extent required to satisfy the claim, would arise to the bank, and the defendant is, therefore, entitled, as stated, to have the questions determined on proper issues. And the principle is in no way affected by the fact that the deposit now stands in the name of the plaintiff, the bank having taken it in ignorance of the true conditions affecting its rights. If, as defendant avers, it was in fact and in truth the husband's property, and placed in the wife's name with the intent to defraud creditors, and the husband being insolvent, she was a volunteer, or if she participated in the fraudulent purpose in such case the attempted appropriation is voided by our statute to prevent fraudulent gifts and conveyances (Rev., secs. 960-962), and the question can, for the purpose of this defense, be considered and dealt with as if the deposit stood in the name of the husband, a course pursued with approval in *Citizens Bank v. Garnett,* 21 Kansas, 354, an apt authority for the disposition being made of the present appeal."

On the new trial below, issues submitted, with the annexed answers thereto of the jury, were as follows:

1. Is the defendant W. M. Moore indebted to the Greenville Banking and Trust Company, and if so, in what amount? Answer: "Yes, $1,748."

2. Was the property purchased of T. E. Hooker paid for with the individual funds of Mrs. M. S. Moore? Answer: "No."

3. Was W. M. Moore the owner of the money deposited in the defendant bank? Answer: "Yes."

4. Were the proceeds of the property sold to W. H. Long deposited in the Greenville Banking and Trust Company in the name of M. S. Moore for the fraudulent purpose of preventing the Greenville Banking and Trust Company from collecting the amount due and owing it by W. M. Moore? Answer: "Yes."

These issues seem to cover the questions which this Court directed to be submitted to the jury, and the answers thereto all seem to have been in favor of the defendant bank.

Whether the deed from Hooker and wife to Moore and wife creates a tenancy in common or an estate by the entirety, it would seem, under the facts, that a conversion of the estate took place, as it was intended that it should do so, upon the execution of the deed to Long. That there was an intention to convert the estate by the entirety into an estate in severalty is evidenced by the fact that the husband attempted to give all of his interest therein to the plaintiff, his wife.

We do not deem it necessary to consider or to decide whether the voluntary conversion of the land into money by the sale to W. H. Long, nothing more appearing, divested the proceeds of every attribute of an estate by the entirety simply by the conversion itself, because we are of the opinion that, by the very conduct of the parties, such a conversion and divestiture resulted, and it was manifestly so intended, as we will show, when the fund was divided into halves and deposited by the mutual consent of the parties, one-half thereof in the defendant bank and the other half in the National Bank of Greenville. Mrs. Moore asserts that the deed for the Hooker lot was bought with her own money, which was derived from other property owned by her in Grimesland. We will state this matter more at large and in substantially her own way. She admits, in her reply to the answer of the defendant, that for several years prior to 22 October, 1915, the Hooker lot was held in the name of the plaintiff and her husband, W. M. Moore, "by deed in the entirety," but that in fact it was bought and paid for with her individual money, and that when the deed was written it was, by inadvertence of the draftsman, conveyed to both husband and wife by the entirety, and that after the discovery of the same she and her husband agreed that it might be so held as appears in said deed, but for the real use and benefit of the plaintiff. That she sold the property to W. H. Long on 22 October, 1915, and that with her husband she joined in a deed conveying the same for twelve thousand dollars to him. She further admits that in payment for the said lot the purchaser, W. H. Long, did draw two checks, made payable to the order of the plaintiff, one in the sum of six thousand dollars, which was deposited in the National Bank of Greenville in the name of and to the credit of the plaintiff, and another check in the sum of six thousand dollars, made payable to her order and deposited in the name of and to the credit of the plaintiff in the defendant bank, and that the reason for so doing was to divide said deposit between the two banks in order that both might share in the benefit of the deposit of said fund equally, which was done at the request of one of the banks.

Now if it was the purpose to convert the land into money, which should be the sole property of Mrs. Moore, this would destroy the estate by the entirety, and it would thereby become an estate in severalty, or if this was to be so in form merely but not in fact, and the intention was that while the apparent title to the fund stood in the name of Mrs. Moore, the real title was to be in them severally, one-half to belong to each, this was a conversion also into an interest in severalty in the money or, in other words, a conversion of the land into money and a division into equal shares of the fund. If the latter was the agreement, and such a conversion could be accomplished by their consent, the hus-

band's title to the half deposited in the defendant bank could not be concealed and covered up to defraud his creditors, he being then insolvent and not having other property sufficient and available to pay his then existing creditors. It seems to us that the jury have found this to be the truth of the matter and the real transaction, though in form it appears to be otherwise, and that Mrs. Moore owned the entire fund. And for the sake of discussion we may concede, without deciding, that when the conversion into money was made they could enter into an arrangement, in defiance of the husband's creditors, by which she should have it all.

Let us see, then, if the jury have sufficiently and conclusively decided that while Mrs. Moore was to take it all in form the other was the real purpose, and that her husband was to be the beneficial owner of the half which was deposited in the defendant bank subject to his check, and that the deposit in her name was a mere shift to deceive, circumvent and defraud creditors. They have said that the Hooker lot was not bought with the individual funds of Mrs. Moore, and that W. M. Moore was the owner of the funds deposited in the defendant bank, and not only is that true, they further say, but that the deposit was made in the name of his wife for the fraudulent purpose of preventing the defendant bank from collecting the amount of Moore's indebtedness to it. This effectually disposes of the idea that there could have been any "estate by the entirety" in the fund realized by the sale of the Hooker lot in Greenville, and, on the contrary, the jury find as a fact that the former estate by the entirety in the lot had, by the express agreement between the apparent owners thereof, been converted into an estate in severalty, as the idea is excluded thereby that it was understood that Mrs. Moore should be the sole owner of the fund.

The characteristics of the anomalous estate, which is denominated as one by the entirety, are well understood. Blackstone (Book 2, p. 182) defines this estate by these words: "If an estate in fee be given to a man and his wife they are neither properly joint tenants nor tenants in common; for husband and wife being considered one person in law they cannot take the estate by moities, but both are seized of the entirety *per tout et non per my,* the consequence of which is that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain in the survivor." Mordecai's Law Lectures (1907), p. 559. This Court has held that the husband is entitled to the income, increase or usufruct of the property. *Long v. Barnes,* 87 N. C., 329; *Simonton v. Cornelius,* 98 N. C., 437; *Bruce v. Nicholson,* 109 N. C., 204; *Bank v. Gornto,* 161 N. C., 341; *West v. R. R.,* 140 N. C., 620. The estate was predicated upon the fact that in law the husband and wife, though twain, are regarded as one—there

being, in other words, a unity of person, which has been called the fifth unity of this estate, the others being of time, title, interest and possession, which also belonged to an estate by joint tenancy. When land is conveyed or devised to husband and wife, nothing else appearing, they take by the entirety, and upon the death of either the other takes the whole by the right of survivorship. 2 Bl., 182; *Topping v. Sadler,* 50 N. C., 357; Freeman on Cotenancy and Partition, sec. 64, and *Harrison v. Ray,* 108 N. C., 215, and the cases *supra,* beginning with *Long v. Barnes.* The statute (1784, ch. 204, sec. 5; Revisal of 1905, sec. 1579) abolishing the right of survivorship in joint tenancies does not apply to this estate. *Motley v. Whitemore,* 19 N. C., 537; *Todd v. Zachary,* 45 N. C., 286; *Woodford v. Higly,* 60 N. C., 234. One peculiarity incident to this estate is, that if an estate be given to A., B. and C. and A. and B. are man and wife, they, being one person, will take a half interest and C. will take the other half. This ancient absurdity seems to be the law in this State now. *Hampton v. Wheeler,* 99 N. C., 222. Another peculiarity of this estate is that neither husband nor wife can dispose of their interest or any part thereof without the assent of the other. The deed of either without the joinder of the other is void. *Gray v. Bailey,* 117 N. C., 439; 2 Blk., 182; *Ray v. Long,* 132 N. C., 891. Neither can such land be sold under execution, nor can the interest of either husband or wife be thus sold. *Bruce v. Nicholson,* 109 N. C., 202; *Gray v. Bailey, supra; Ray v. Long, supra.* Nor can one be barred by the statute of limitations unless the other be barred also. *Johnson v. Edwards,* 109 N. C., 466. The above rules apply to devises to man and wife (*Simonton v. Cornelius, supra*), and also to contracts to convey land to man and wife. *Stamper v. Stamper,* 121 N. C., 251. They likewise apply to a gift or devise to a man and his wife "during their natural lives." *Simonton v. Cornelius, supra.* Mordecai's Law Lectures (1907), pp. 559-560. In *Hairstone v. Glenn,* 120 N. C., 341, where money, the separate earnings of husband and wife, was deposited in a bank in their joint names, the husband stating to the cashier, in the presence and hearing of his wife, that it was their joint earnings and that he desired a certificate made out for the whole amount ($1,500) in their joint names, which was done, and the certificate delivered to the husband, the latter having stated that when either died he wanted the survivor of them to have the entire fund; the husband then died and his widow claimed but half of the fund: It was held that she was entitled to it, the question of survivorship and her right to the whole of the fund not being before the Court. That case, while very close to the question raised in this one, does not decide it, for the reason stated, that she did not claim the whole of the fund. The interest and control of the husband during the existence of the joint estate, or the joint lives

of the two parties, is well illustrated in the recent decision of *Dorsey v. Kirkland,* 177 N. C., 520, known as "the flume case"; *Jones v. Smith,* 149 N. C., 317, and *Bank v. McEwan,* 160 N. C., 414, where the question of the respective interests and rights of the two parties is fully considered. In the flume case it is said, citing and quoting from *Bynum v. Wicker,* 141 N. C., 96: "This estate by entirety is an anomaly and it is perhaps an oversight that the Legislature had not changed it into a cotenancy, as has been done in so many States. This not having been done, it still possesses here the same properties and incidents as at common law, under which 'the fruits accruing during their joint lives would belong to the husband,' hence the husband could mortgage or convey it during the term of their joint lives, that is, the right to receive the rents and profits; but neither could encumber it so as to destroy the right of the other, if survivor, to receive the land itself unimpaired." And in *Greenville v. Gornto,* 161 N. C., 342, a lease for ten years made by the husband was held to be valid, and the Court said concerning the nature of the estate and the rights and powers of the husband during the life of the wife: "As Brady and his wife held, not as tenants in common or joint tenants but by entireties, their rights must be determined by the rules of the common law, according to which the possession of the property during their joint lives vests in the husband, as it does when the wife is sole seized. Neither can convey during their joint lives so as to bind the other or defeat the right of the survivor to the whole estate. Subject to the limitation above named, the husband has the same rights in it which are incident to his own property. By the overwhelming weight of authority the husband has the right to lease the property so conveyed to him and his wife, which lease will be good against the wife during coveture and will fail only in the event of her surviving him." *Bynum v. Wicker, supra; Long v. Barnes, supra; Simonton v. Cornelius, supra,* and *Greenville v. Gornto, supra.* An interesting discussion of this "unity of person," as pertaining to the relation of husband wife, by *Justice Allen,* will be found in *Freeman v. Belfer,* 173 N. C., 581, where the authorities are collected and reviewed.

But this unity or entirety of the estate may be destroyed or dissolved ⸴ by the joint acts of the parties, and the estate which was entire turned into a tenancy in common or into one in severalty, each taking separately a share thereof to be determined by them. The transaction may be of such a nature and the conveyance so worded that they will be decreed to hold as tenants in common and not by the entirety. *Eason v. Eason,* 159 N. C., 539; *Highsmith v. Page,* 158 N. C., 226; *Stalcup v. Stalcup,* 137 N. C., 305; *Speas v. Woodhouse,* 162 N. C., 66; *Isley v. Sellers,* 153 N. C., 374. Where it appears that no such estate as that by the entirety was intended, but it was the purpose that they should hold

as tenants in common, it will be so adjudged, and in proper cases the instrument will be reformed to carry out the intention. *Highsmith v. Page, supra.* The intention appearing, a conveyance may be made to husband and wife as tenants in common; but otherwise they will take by the entirety, with right of survivorship. *Holloway v. Green,* 167 N. C., 91. A divorce *a vinculo,* as it destroys the unity, will convert the estate by entirety into one in common. *McKinnon v. Caulk,* 167 N. C., 411.

In this case it appears from the verdict of the jury that the parties had agreed to sever the unity existing between them as to the estate in this land when it was sold, and in pursuance of that understanding six thousand dollars of the fund, or one-half thereof, was deposited in a bank for the plaintiff, and in her name, and the other half in the defendant bank, also in her name, but really for the secret benefit of her husband, so that he could hold off the defendant as his creditor, and hinder the recovery of its claim, he being then in failing and embarrassing circumstances. There was ample evidence of this fact so found by the jury, for the husband checked upon the deposit and treated it as his own with the knowledge and consent of his wife, and while the cashier, Mr. C. S. Carr, was trying to effect a settlement or adjustment of Moore's account with the defendant bank, Mr. Moore, after manifesting some indifference, finally turned to him and said, "All my property stands in my wife's name and the bank will have to whistle for its money." His indebtedness at that time was $2,000 with interest. The jury have found that the debt is $1,748; that the property purchased from T. E. Hooker was not paid for with the individual funds of Mrs. Moore; that Mr. Moore was the actual owner of the fund deposited in the defendant bank, and that the deposit was made in the name of Mrs. Moore with the fraudulent purpose of preventing the defendant from recovering upon the note held by it against Mr. Moore. If there was evidence to support this verdict, and there is no error in the charge of the court or elsewhere in the case, we do not see why the defendant is not entitled to the judgment now being reviewed.

We will now consider briefly if there was any error in the charge or the rulings of the court at the trial. The charge was as clear-cut and as free from any error as it could possibly be, and the jury have found, evidently, when we read the verdict in the light of the evidence and the charge, as we should do, that the parties contributed equally to the purchase of the Hooker property, and that they agreed to divide the proceeds of its sale equally between them, the fund deposited with the defendant being Mr. Moore's half, though not credited on the books of the bank in his name. This was a transaction between husband and wife and a third person, the defendant, who was a creditor of the in-

solvent husband. There is evidence of facts and circumstances which give rise to a grave suspicion of fraud if they were established, and the jury have found upon them that there was an actual intent to defraud the defendant, and there is, therefore, nothing left in the case that we can see to defeat the defendant's recovery.

On the motion of the defendant, we have excluded exceptions numbers 13 to 27, both inclusive, because the alleged errors are not properly assigned under the rule of this Court. There is no real merit in the remaining assignments. The documentary evidence was plainly competent. As to how the husband intended to hold the property was immaterial, as the deed spoke for itself, and there was no equity for reformation set up. The business transactions of Hall & Moore were irrelevant to the inquiry, as also was the question whether Hall had assumed this debt without the assent of defendant. This did not discharge W. M. Moore as debtor; nor did Moore's reason for not paying the note have any proper bearing upon the case. He did not pay but still owed it to the bank. This was enough, and was embraced by the issues, and it was equally immaterial whether Moore had disposed of his interest in the firm of Hall & Moore. We do not understand how any of these matters, if found for the plaintiffs, could affect the result. The excluded assignments relate to the charge of the court. Although they have been put out of the case, we have carefully examined them, in connection with the instructions of the court, and discover no real merit or ground for reversal in any of them. Whether the money was deposited with the banks, half of it in each of them, for their accommodation, or was put there under a false designation of the depositor to defraud the defendant, as Mr. Moore's creditor, was for the jury to decide upon the evidence. The vital and pivotal question was, besides the one just stated, whether the plaintiff agreed, either expressly or by inference from their acts and conduct, that any estate by the entirety, theretofore existing, should be changed into an estate in severalty, one-half of the purchase money paid for the Hooker lot to be the property of each of them, was also a question for the jury. They were not to have one-half of each deposit, but one was to have the whole deposit in the National Bank of Greenville and the other Mr. Moore, the whole deposit in the defendant bank. This is what the jury have found to be the fact, upon sufficient evidence, as we think. The last question, whether the defendant may set off the debt due to it by Mr. Moore against this deposit, was decided by the Court when the case was here before (173 N. C., 180), and it was further said that if in the strictness of law this cannot be done, the defense here pleaded will be treated as a bill or action, in the nature of an equitable *fi. fa.,* as the property is not available to creditors by the ordinary legal process. Numerous authorities are cited in defend-

ant's brief to sustain the right to set-off in such a case. As the question is an important one we will cite a few of them: *Hodgin v. Bank,* 124 N. C., 541, reversed on rehearing but on a point not material here; *Bank v. Armstrong,* 15 N. C., 519; *Clark v. Bank,* 160 Mass., 26; *Coach v. Preston,* 105 Ill., 470; *Bank v. Bank,* 46 N. Y., 82; *Garrison v. Trust Co.,* 139 Mich., 392; *Knapp v. Correll,* 77 Iowa, 528; *Reynes v. Dumont,* 130 U. S., 354; *Gibbons v. Hierx,* 105 Mich., 509; *Bank v. Meyer,* 66 Ark., 499; *Bank v. W. M. Brewing Co.,* 50 Ohio St., 151; *Falkland v. Bank,* 84 N. Y., 145.

After a careful review of the entire record we have not been able to discover that any error was committed by the court at the second trial.

No error.

CLARK, C. J., concurs in all that is so clearly and convincingly stated in the opinion of *Walker, J.,* and for the additional reason that when the land was converted into money the estate by entireties ceased, for in England, whence was derived this anomalous estate, there was never any estate by entireties in personalty. *Gooch v. Bank,* 176 N. C., 216.

The estate by entireties was not created by statute either in England or in this State, but was a judicial creation in England, and we adopted it only to the extent that it obtained there. *Gaston, J.,* in *Motley v. Whitemore,* 19 N. C., 537, says: "When *lands* are conveyed to husband and wife they have not a joint estate but they hold by entireties. Being in law but one person, they have each the whole estate as one person; and on the death of either of them the whole estate continues in the survivor." This was quoted by *Hoke, J.,* in *McKinnon v. Caulk,* 167 N. C., 412. It was also recognized that entireties did not apply to personalty in *Hairston v. Glenn,* 120 N. C., 341, where money was deposited in bank in the joint names of husband and wife, and a joint certificate made out for the amount, which was delivered to the husband, but on his death the wife was held entitled to recover one-half of it. While the point was not expressly raised it is clear that the counsel in that case and the court were aware that there was no estate by entireties in personalty.

There was this very good reason for this distinction for in England, until about 1880, all personalty of the wife, whether acquired before or after marriage, became the absolute property of the husband and there was no occasion for any estate by entireties. And such was the case in this State until the Constitution of 1868, which allowed a wife to retain her property, whether acquired before or after marriage.

As to realty, in England (as in this State till 1868) the realty of the wife became the property of the husband during his lifetime, and therefore for feudal reasons at her death, if he were the longer liver, it went

absolutely to him instead of to her heirs, as the land was burdened with the duty of furnishing a soldier for forty days each year, if called for in the wars, for there was no standing army. If, however, the wife were the longer liver it went to her absolutely instead of to his heirs who might be minors. This is the origin of the "antiquated absurdity" of this estate, as *Justice Walker* appropriately styles it, but for which there was a good reason as to realty when it was created.

Even as to estates in entireties in realty, they have been abolished in England by the "Married Woman's Act of 1882." *Thornley v. Thornley,* 2 Ch. Div. (1893), 229. It would logically seem that such estate was abolished here by our statute of 1784 (now Rev., 1579) which converted all joint estates into tenancies in common, and still more conclusively by our Constitution of 1868 which, like the English "Married Women's Act," vested a wife with her property, real or personal.

This Court, however, held differently (as to entireties in realty), and though it has often recommended to the Legislature the abolition of this anomaly, it has not been done.