OPINION OF THE COURT
Arthur J. Abrams, J.
Petitioner, the Suffolk County Department of Social Services (herinafter referred to as DSS), moves for an order fixing arrears owed by the respondent to DSS at $3,967.50 as of December 22, 1978 and for an order directing the entry of a money judgment in that amount pursuant to section 460 of the Family Court Act. In opposition, the respondent avers that the arrears had been paid and therefore the motion should be denied.
Respondent contends that the parties agreed that the arrears were $4,140, as of July 22, 1978, and were satisfied by virtue of the following: (1) The payment of $2,795.14 to DSS from the proceeds of a surplus money proceeding which will *798 be discussed in greater detail hereinafter; (2) by payment of respondent’s attorney’s escrow check dated March 13, 1978 payable to the Suffolk County DSS in the sum of $932.36 (the said check is presently in the court file undeposited); (3) and the balance apparently paid pursuant to the existent support order in the sum of $412.50.
Petitioner DSS counters that no part of the surplus moneys should be credited against respondent’s arrears because the respondent failed to appear in the surplus money proceeding and section 104 of the Social Services Law permitted the DSS to receive respondent’s interest in the surplus moneys and apply it (the moneys) against the assistance lien the DSS held against respondent’s former wife, Virginia L. McLaren.
A review of the history herein is an absolute prerequisite to determining this motion. The former wife, Virginia L. Mc-Laren, filed a support petition on December 26, 1974 which alleged that she and the four children of her marriage to respondent received public assistance in the sum of $532 per month. An order of support in the sum of $60 per week ($10 for the wife and $12.50 for each of the four children) was entered on April 21, 1975. An enforcement petition was filed June 24, 1977 and sought, inter alia, an order fixing arrears and directing the entry of a money judgment. On July 27, 1977, that petition was disposed of by an in-court stipulation which was converted into an amended consent order and provided for weekly support in the sum of $60 per week ($10 alimony, $12.50 for each of three children and $12.50 towards arrears which were fixed at $4,140 as of July 22, 1977).
Pages 5 and 6 of the July 27, 1977 stipulation contain the following language: Mr. Clayton: "as to those arrears ($4,140), I have represented to counsel and represent to the court that I am handling a wrongful death action and the decedent is his mother * * *. At the time of the settlement we will pay up the total arrears * * * I will lien my third party action * * * to that effect with the understanding that we will be contacting Jerome Campo’s office (attorney for the DSS) in Center-each because there was a foreclosure action with respect to the prior marital home and there is a good possibility that there was an excess money proceeding there and the county could have received the money and we don’t know about it.” (Emphasis supplied.)
A foreclosure sale of the marital premises formerly owned by the respondent and Virginia L. McLaren leads to a surplus *799 money proceeding, see referee’s report dated June 13, 1977 which awarded the DSS the sum of $2,795.14 plus interest. The report was confirmed by order of the Honorable Charles R. Thom of the Suffolk County Supreme Court on September 14, 1977. This sum was applied by the DSS in partial satisfaction of the assistance lien which they held against the former wife. Again, we note that respondent, George McLaren, failed to appear at the surplus money proceeding although he apparently had been notified thereof.
By letter dated March 15, 1978, respondent’s attorneys sent to the court their escrow check dated March 13, 1978 in the sum of $932.36 payable to the order of the Suffolk County DSS. As stated aforesaid, that check remains in the court file.
Mr. McLaren’s contention that the entire amount of the surplus moneys received by DSS should be credited against his arrears is without merit. Had respondent appeared in the surplus proceeding he would have been entitled to no more than 50% of the said surplus moneys premised upon co-ownership with his former wife of the equity of redemption since they held title in the marital home as joint tenants. A creditor of either spouse could look only to that spouses’ 50% share of the surplus fund from which to satisfy his lien (Mojeski v Siegmann, 87 Misc 2d 690). A technical argument could certainly be raised that George McLaren’s failure to appear legally foreclosed even his right to share in the surplus fund. Further, we derive nothing from the language of the July 27, 1977 stipulation which indicated that the DSS obligated itself to apply the surplus moneys towards the payment of arrears due it from the respondent. The language of the stipulation is merely to the effect that there was a "possibility” that there was a surplus proceeding and respondent’s counsel would contact the DSS attorney concerning it. For it all, however, we cannot accept the DSS’ position that it properly applied the entire amount of the surplus moneys in payment of the lien it held solely against the former wife.
As a creditor of Virginia McLaren by reason of its assistance lien, the DSS was entitled to satisfy the said lien only to the extent of Mrs. McLaren’s one-half interest in the fund; the balance would have escheated to the State of New York if unclaimed by the respondent. It appears to the court that the referee construed the assistance lien to be against both spouses since it contained both names and the entire surplus was remitted to the DSS. Neither the referee’s report nor the *800 order confirming it provided the manner in which the moneys received by the DSS were to be allocated. It does not appear that the DSS even saw fit to advise the referee or the confirming court of the respondent’s possible interest in the surplus even though the DSS knew that their lien was only against Mrs. McLaren’s share in the said fund. The DSS knew that George McLaren had not executed any bond or mortgage in their favor and were aware of the respondent’s interest in the said surplus moneys prior to the date of the Supreme Court’s order of confirmation.
The DSS’ posture that section 104 of the Social Services Law provides them with a remedy to obtain and apply the entire surplus fund in payment of its lien is based on an incorrect interpretation of that statute. Section 104 is only applicable to a person who was liable for another’s support. In order to be liable a person must be of sufficient ability to pay the amount of support assistance during the period it was rendered (Fuller v Galeota, 271 App Div 155). The period of assistance here was 1977 to date during which period respondent was subject to an order of support of this court. Presumptively, at least, that order required respondent to pay support to the extent of his financial ability (Family Ct Act, § 443) especially since respondent’s dependents were receiving public assistance. Therefore, respondent was not a person liable within the meaning of section 104 of the Social Services Law.
Section 460 (subd 1, par [e]) of the Family Court Act gives the court discretion to make an order directing the entry of judgment for the amount of arrears, or such part thereof, as justice requires. Based upon the foregoing, this court is of the opinion that both the law and fundamental fairness requires that respondent’s arrears be reduced by 50% of the surplus moneys received by DSS. Accordingly, the motion is granted to the extent that petitioner DSS have judgment pursuant to section 460 of the Family Court Act in an amount equal to $4,140 less the sum of $1,397.57 (one half of the surplus moneys) and the sum of arrears paid since July 22, 1977. As an aside, respondent has available for the further reduction of the outstanding arrears, the $932.36 reflected by his attorneys’ escrow "stale” check deposited with the court.