FRANKLIN SQUARE NATIONAL BANK, Plaintiff, *v.* JOSEPH A. SCHILLER et al., Defendants.

Supreme Court, Nassau County, June 30, 1950.

*Bernhardt, Sain, Shapiro & Epstein* for plaintiff.

*Edward Marks* for Natalie J. Schiller, claimant, defendant.

*Nathaniel Choloney* for Joseph A. Schiller, claimant, defendant.

FERDINAND I. HABER, Referee. In this surplus moneys proceeding there are two claimants, Joseph Arnold Schiller and Natalie J. Schiller, who are husband and wife in the State of New York and will be so referred to hereafter. The nature and extent of the interest of each claimant in a surplus of $18,197.39 is to be determined. The wife claims the entire fund. The husband contends that it belongs to the claimants as tenants by the entirety and should be held indivisible until the death of one of them.

The facts undisputed are, on May 5, 1941, the claimants acquired, subject to mortgage, title to real property in Rockville Centre as husband and wife and a tenancy by the entirety was thus created of the equity. In the same year the parties seem to have separated when the husband entered the armed forces of the United States. In August, 1946, the husband sued for divorce in Nevada and obtained a decree by default. The wife did not appear. No jurisdiction of her person was obtained.

About December 20, 1946, the wife instituted an action for a separation in New York State and obtained an order appointing herself receiver in sequestration of the husband's property. Process was personally served upon the husband in the District of Columbia in January, 1947. He did not appear in the action. On May 8, 1947, the wife obtained a judgment in the action. She alleged as one act of cruelty the bringing of the Nevada divorce action upon false and fraudulent charges. The judgment directed the defendant to pay $500 for counsel fees and

$100 to James G. Blake, allowed for services as attorney appointed to protect the interests of the defendant under the Soldiers' and Sailors' Civil Relief Act and the Military Law of New York, and provided for the wife and the child of the marriage $350 a month for support and maintenance. The judgment continued the sequestration.

In July, 1947, this action to foreclose the mortgage upon the Rockville Centre property was started. Judgment of foreclosure and sale was entered January 27, 1948. The premises were sold to a third party on March 18, 1948, and the deed delivered about April 13, 1948. The sale resulted in the surplus now on deposit with the Nassau County Treasurer.

Subsequent to the judgment of foreclosure and sale, the wife filed, in the Nassau County Clerk's office, a " Notice of Levy " (Exhibit XI) in which a lien for arrears of alimony was claimed against the foreclosed property. After the sale the wife filed two claims to the surplus — her individual claim and a claim as receiver in sequestration, based on the notice of levy. Still later, while this proceeding was pending, the wife obtained two money judgments for alimony arrears — one on February 17, 1950, for $8,050.50, and another on March 8, 1950, for $5,702.75. If the claims of the wife individually and as receiver in sequestration are allowed, the surplus would be exhausted. On July 28, 1948, the husband filed a claim upon the surplus, asserting a right in the whole fund as tenant by the entirety, and a demand that the fund be held intact until the death of either himself or his wife.

The disposition of this proceeding has been delayed for about a year and a half during which time hearings were suspended because motions were made in *Schiller* v. *Schiller,* the separation action.

The defendant husband appeared specially there by the same counsel acting for him here, and moved to set aside the separation decree because of lack of jurisdiction of the defendant's person, the contention being that the husband was not a resident of the State of New York when process was served upon him. The wife made a cross motion for the entry of a money judgment for alimony arrears.

The matter was referred to an Official Referee upon the issue of the residence of the husband. Referee found that, at the time of service of process, the husband was a resident of New York State. This finding was upheld at Special Term in January, 1950. In effect, that decision was an adjudication for the second time that the Nevada divorce decree was invalid and

the New York separation judgment was effective against the defendant husband.

No oral testimony was offered in the proceeding. The proof at the several hearings was entirely documentary evidence. In behalf of the wife, thirteen exhibits were offered. The husband submitted one notice of claim. Elaborate briefs were submitted by counsel in support of the respective claims. The wife requested specifically a finding that she was entitled to one half of the surplus after deduction therefrom of the costs of the reference and the $100 allowance to James G. Blake, Esq., under the separation judgment; that the remaining one half of the fund be declared the property of the husband, subject to liens of the separation judgment and the judgments entered after this proceeding was started; that a charge of $13,757.25, plus subsequent installments of alimony as they become due, be made against the husband's share; and that the whole surplus be paid to her — first, her individual one-half interest and then, on account of her other claims.

The husband asks that, after deduction for the expenses of the reference, including allowances for counsel to both parties, the balance be held by the Nassau County Treasurer until one of the parties dies, and then be paid to the survivor. He waives his share of the income, consenting to payment of it to the wife, and repeats an offer of dividing the surplus equally between the parties.

To ascertain the amounts due the claimants and report the proper disposition of the surplus and priority of liens thereon, the Referee is required to consider some questions of law upon which there are no decisions directly in point.

The first question is, what is the tenancy of the claimants in the surplus. The answer is, a tenancy in common. The Referee reaches that conclusion, however, for reasons different than those urged by the claimant wife. The doctrine of estoppel enunciated in decisions of the Court of Appeals (*Starbuck* v. *Starbuck*, 173 N. Y. 503, 508; *Caldwell* v. *Caldwell*, 298 N. Y. 146, 150; *Matter of Rathscheck*, 300 N. Y. 346, 350) which prevents a party from questioning the validity of a judicial decree which he procured should not be applied here. The husband claimant is not actively impugning the validity of the Nevada divorce decree, but passively accepts the ruling of this court that the decree is invalid and the natural consequence that the property rights of the parties are based upon a marital status as if there had been no Nevada action. He should not, therefore, be estopped. Furthermore, the wife can not consistently

assert that the Nevada decree is invalid and then claim that the invalid decree determined property rights. The reason for holding that the parties are tenants in common is that there can be no tenancy by the entirety of personal property. Such a tenancy is a common-law one and can be only in real estate (*Matter of Albrecht,* 136 N. Y. 91; *Matter of McKelway,* 221 N. Y. 15; *Matter of Blumenthal,* 236 N. Y. 448). In these cases the tenancy by the entirety was held terminated because of a voluntary sale of the real property and conversion of the proceeds of sale to personalty. The rule should be the same where the conversion came about through foreclosure of a mortgage and the sale of the property at public auction to an outsider. The surplus proceeds of the sale are personal property. A tenancy in such personal property might be held a joint one subject to the right of survivorship. In the cases just cited, the principle was laid down that when the real estate is converted into personal property, the tenancy becomes one in common unless there be something to show a contrary intent. There is no evidence here of such contrary intent. Though a joint tenancy has the characteristic of survivorship which is also essential in a tenancy by the entirety, the former is not indivisible, as is the latter. The former can be dissolved by partition or otherwise. It would be futile to hold the tenancy here a joint one when change to one in common would be inevitable. In equity, it is proper to shortcut the matter and declare now that the tenancy is one in common.

Accordingly, one half of the net surplus should be payable to the wife and the other half be treated as the property of the husband.

The next question is, can the wife, by her claim of liens or otherwise, charge the one-half share of the husband with any part of these claims or liens. She was not a money judgment creditor of the husband until the recent judgments were docketed against him, long after the foreclosure sale and after this proceeding was pending. At the time of the sale, the wife had a separation judgment which placed upon the husband the liability to pay certain sums immediately and a monthly payment of $350 for the support and maintenance of the wife and child.

There were no other parties to the foreclosure suit. No rights of third parties are anywhere involved. The contest is between the only two persons who have any rights in the *res.* A case on all fours with the instant one arose in *Buffalo Sav. Bank* v. *Hunt* (64 Misc. 643). The court held that the claim of the wife, based upon unpaid alimony accrued and due, was prior

to the lien of a money judgment recovered against the husband after the judgment in the matrimonial action. No subsequently reported case questions that decision rendered in 1909. The Referee regards it as an authority to be followed. In accord with it, the wife is entitled to charge the husband with $600 (counsel fees and allowance to attorney representing defendant) immediately payable under the separation judgment, and $3,850 for eleven monthly installments. of alimony which became due between the date of the separation judgment and the date of the foreclosure sale — that is, $4,450, with interest from the dates when each payment became due; a total of $4,598.30.

After the expenses of the reference have been provided for and the two specific claims of the wife heretofore considered in this memorandum have been discharged, the balance then remaining should be regarded as the property of the husband and payable to him. The wife's rights in the surplus should be limited to the foregoing claims. The '' Notice of Levy '' was ineffective to create a lien upon the real property which could thereafter attach to a surplus, nor can the judgments docketed during the pendency of this reference create without further process or proceedings liens upon the surplus. Only liens existing at the time of the foreclosure sale can give rise here to a right to an order of this court directing payment thereon from the surplus.*

---

* Report confirmed by STODDART, J., August 22, 1950. The opinion of STODDART, J., is as follows:

Motion to confirm in part the Referee's report and for other relief.

The Referee's report is confirmed in all respects, except as to paragraph '' 9 (D) '' thereof. The sum recommended by the Referee to be paid Joseph Schiller shall be paid to Natalie J. Schiller as receiver in sequestration.

Settle order on notice.