William J. Regan, S.
The will of Grant L. Fox was probated in this court on October 27, 1970. The entire estate was devised and bequeathed to Kay Knox, decedent’s niece. Edna L. Fox, widow of the decedent, was adjudged incompetent on March 13, 1969 and confined to Buffalo State Hospital. Pursuant to the appropriate sections of the EPTL, by an order of the Supreme Court, the widow’s election was filed by Robert L. Marinelli, her committee.
Presently, before this court is the judicial settlement proceeding filed by Kay Knox, executrix. A claim by the State of New York Department of Mental Hygiene in the sum of $16,685.15 has been filed in this estate and was rejected by the executrix. On the return date of the citation herein, two principal questions were discussed. With regard to the widow’s election, the question was raised as to what funds such election might be concerned with. The executrix’ accounting shows a gross estate of $11,328.67 which reduced by funeral expenses, debts and administration expenses will leave a net of approximately $9,000.
Prior to August 31, 1966, Grant L. Fox and his wife, Edna L. Fox, owned as tenants by the entirety, real estate known as 81 Milford Street, Buffalo, New York. After Edna was adjudged incompetent in 1969, a Supreme Court order was granted authorizing the sale of this real property for the sum of $16,500. A further order of the Supreme Court directed that the net proceeds of this sale be deposited in a joint savings bank account for the benefit of Grant L. Fox and Edna L. Fox or the survivor of them.
At the present time, this account has a balance of approximately $14,000, being held in the committee’s account. It is argued that the proceeds from the sale of the real property should qualify as a testamentary substitute under EPTL 5-1.1 (subd. [b], par. [C]). If this is so, then by virtue thereof, the widow, as survivor of the joint bank account, has received more than her elective share and will not be entitled to share any further in the estate.
Under the EPTL, certain inter vivos dispositions may be treated as testamentary substitutes for the purpose of the election by a surviving spouse.
*472 EPTL 5-1.1 (subd. [b], par. [C]) ‘‘ Money, deposited, after August thirty-first, nineteen hundred sixty-six, together with all dividends credited thereon, in the name of the decedent and another person and payable on death, pursuant to the terms of the deposit or by operation of law, to the survivor, with a banking organization, savings and loan association, foreign banking corporation or organization or bank or savings and loan association organized under the laws of the United States, and remaining on deposit at the date of the decedent’s death.
“ (D) Any disposition of property made by the decedent after August thirty-first, nineteen hundred sixty-six whereby property is held, at the date of his death, by the decedent and another person as joint tenants with a right of survivorship or as tenants by the entirety. ”
In the court’s opinion, these funds do not qualify as a testamentary substitute. The original ownership of the real property predated August 31, 1966. At most, the sale constituted a change in the form of the assets. Furthermore, the disposition was not a voluntary one, but was made by order of the Supreme Court. No actual disposition took place which would comply with this section of the EPTL.
Section 1755 of the Eeal Property Actions and Proceedings Law states: “ A sale of real property, or an interest in real property other than a possibility of reverter, of an infant or an incompetent person, does not give to the infant or incompetent person any other or greater interest in the proceeds of the sale than he had in the property or interest sold. Those proceeds are deemed property of the same nature as the estate or interest sold until the infant arrives at full age or the incompetency is removed.”
The court, in Matter of Kleinerman (66 Misc 2d 563) discusses the history of the statute concerning testamentary substitutes with especial emphasis on transfers, substitutions and conversions after September 1, 1966 of exempt transactions upon property rights established prior thereto.
In the court’s opinion, the funds in the committee’s account are assets which belong to the widow as survivor of the fund from the sale of real property which bore the characteristics of a tenancy by the entirety prior to August 31,1966, and regardless of later changes in the form of the assets, vested in her immediately upon decedent’s death.
The second question concerns the claim of the State of New York Department of Mental Hygiene. There is no objection concerning the amount involved but only the source from which payment should be made. Petitioner’s position is that inasmuch *473 as the widow had and still has, funds in her individual name in the committee’s account, that the State should look directly to that account and that, therefore the estate of the husband should not be primarily liable.
The committee acting as guardian ad litem in this proceeding and the Department of Mental Hygiene present different arguments. Subdivision 2 of section 24 of the Mental Hygiene Law provides: ‘ ‘ The spouse of a mentally disabled person and the parent of a mentally disabled person under the age of twenty-one years, if of sufficient ability, and the committee or guardian of the person and estate of such person, if the estate is sufficient for the purpose, shall cause such person to be properly and suitably cared for and maintained.”
It appears that although following the sale of the real estate there were funds in the committee’s account that no demand was made by the Department of Mental Hygiene for payment to the State for the incompetent’s support and maintenance. Furthermore, it has not been shown nor does it appear now from the accounting in the husband’s estate that he was of “ sufficient ability” to provide for said incompetent’s support and maintenance.
The court is not convinced that in all cases a spouse is primarily liable for the care of an incompetent spouse. Consequently, it is the court’s ruling that the widow’s election will entitle her to one half of the net estate of Grant L. Fox, such funds to be paid to the committee and the claim against the husband’s estate should be denied. Inasmuch as the committee has sufficient funds for that purpose, the New York State Department of Mental Hygiene should look to the committee for satisfaction of its claim.
Let the deerée embrace this decision.