John F. Scileppi, J.
This is a motion by the defendants-claimants, Mid-Island Lumber & Supply Co., Inc., and Suffolk Cement Products, Inc., to confirm the referee’s report and to disburse the surplus money in accordance therewith. The motion is opposed by the defendant Doris C. Siegmann on grounds set forth below.
This is a surplus money proceeding following the foreclosure and sale of certain real property. The subject premises were owned by Doris Siegmann and Arthur Siegmann, her husband, as tenants by the entirety. The surplus money fund amounts to more than $18,000. The referee’s hearing was attended by a number of claimants, and he found that Doris Siegmann is a joint obligor with her husband only as to the claimants Villa and Larghi. In other words, any debts owed to the other claimants are owed by Arthur Siegmann alone. Doris Siegmann has no objection to paying the joint creditors from the surplus money fund. However, she contends that the fund is held by her and her husband as tenants by the entirety, just as the real property was. Such tenancies are, of course, inseverable. Thus, she claims, no payments can be made out of the fund to creditors of her husband alone, until the tenancy by the entirety is terminated by the death of one or more of the tenants. She maintains that the referee was in *692 error in determining that the fund constituted personal property, which cannot be owned by the entirety and is therefore severable.
The legal question presented herein has not received entirely consistent treatment from the courts of this State. In fact, there are two distinct lines of cases each arriving at a different result.
The line of cases holding that a surplus money fund created by a foreclosure sale is constructively real property traces its genesis to Germania Sav. Bank v Jung (28 Abb NC 81, 82), where the court held as follows: "the conversion of the real estate into money by the foreclosure herein, did not change the character of the surplus as between Jung and his wife, but the fund still continues, constructively, real estate (Dunning v. Ocean Nat. Bank, 61 N.Y. 497, 503). * * * Thus it follows that Jung and his wife own said surplus moneys as tenants by the entirety”.
The only authority cited for this proposition was Dunning v Ocean Nat. Bank (61 NY 497). However, no other decision on this point seems to have recognized the fact that the relevant statements in Dunning were in the separate concurring opinion of Judge Dwight, so that they were, of course, dictum. Thus, Germania Sav. Bank, the ultimate authority for this line of cases, was apparently decided on misplaced reliance on Dunning.
In any event, the history of this problem can best be understood by tracing it chronologically. The first recorded case to have followed the rule in Germania was Stretz v Zolkoski (118 Misc 806). However, the next case in point, Franklin Sq. Nat Bank v Schiller (202 Misc 576) which was actually only a referee’s report that was later confirmed without opinion, held, without naming any authority, that a monetary fund created by an involuntary conversion of real property such as a foreclosure sale should be treated the same as a voluntary conversion, and that the resultant fund was personal property.
The next case in line was Bennett v Fish (2 Misc 2d 1051) which reached the same result as Germania and Stretz, but did not cite either of those two decisions, or any other authority. Bennett was subsequently followed in Empire State Fed. Sav. & Loan Assn. v Wukowitz (197 NYS2d 87) which specifically criticized Franklin Sq.. Nat. Bank v Schiller (supra).
Next came two rulings in Nassau County: East River Sav. *693 Bank v Kind (26 Misc 2d 584) which relied on Germania and Stretz, expressly distinguishing Franklin Sq. Nat. Bank; and Leis v Shaughnessy (26 Misc 2d 536) which cited for its authority Empire State Fed. Sav. & Loan Assn v Wukowitz (supra) and East Riv. Sav. Bank v Kind (supra).
The first Appellate Division decision in this area was First Fed. Sav. & Loan Assn. of N. Y. v Lewis (14 AD2d 150, 154) where the court wrote as follows: "In this State, it appears to be well settled that where realty owned by husband and wife is sold in a mortgage foreclosure action, the proceeds which remain after the mortgage debt is satisfied are constructively real property held in entirety by both spouses”.
The Second Department’s authority for this statement was Dunning and Germania.
The last case in this line was South Shore Fed. Sav. & Loan Assn. v Gundel (42 Misc 2d 510) decided in May, 1963. The only authority mentioned was East Riv. Sav. Bank v Kind (supra).
In July, 1963, the Court of Appeals handed down a decision which, in my opinion, effectively changed the law in this area. In Hawthorne v Hawthorne (13 NY2d 82, 83) the question presented was "whether the proceeds of a standard fire insurance policy insuring the interest of plaintiff wife and defendant husband as tenants by the entirety of real property must be divided at the demand of one of the owners or are impressed in equity with the inseverable quality of the ownership of the realty against whose loss they are payable.”
The court first reiterated the well settled rule "that there can be no holding by the entirety in personalty”. It then went on to analyze the difference between voluntary and involuntary conversions of real property, noting that in the latter situations, such as condemnation, the proceeds of the conversion have been deemed to be realty. However, the court felt that situations involving the proceeds of a fire insurance policy were more like the case Matter of Blumenthal (236 NY 448), where a wife disputed the estate of her husband as to the ownership of a purchase money bond and mortgage taken by the husband and wife on the sale of real property held by them as tenants by the entirety, and the court ruled that they had held the bond and mortgage as tenants in common.
The Hawthorne (supra, p 86) court then engaged in the *694 following analysis of the nature of funds created by conversions of real property held by the entirety:
"Here, as in the Blumenthal case, the nature of the tenancy by which the husband and wife held the insured property is a mere incident, absent a dispute over the quantity of the parties’ interests. While in a certain sense the proceeds take the place of the building destroyed by fire, as we noted in Blumenthal, it is only in the sense of a thing of like value, secured through a personal contract, and not necessarily of like ownership.
"It must not be forgotten that we approach the question presented in this case with the sensible rule that an inseverable tenancy is not recognized in this State as a legitimate mode of holding personal property. Entireties in real property became established at a time when realty was not a subject of commerce; it was the subject of possession and use by the owners. The quality of inseverability was, therefore, no great embarrassment to the full realization of the benefits of ownership of real property as it was then enjoyed. Putting aside the change in the use of realty, it is incontrovertible that a decision that ties up money, allowing only division of interest, is a serious impediment to its enjoyment. Therefore, since it is only by analogy that the incidents of a tenancy by the entirety may apply to personal property, considerations of policy and common convenience reinforce the applicability of the reasoning of the Blumenthal case.
"Germania Sav. Bank v Jung and Stretz v Zolkoski deal with surplus moneys after mortgage foreclosures and do not furnish a close analogy to this case. Moreover, indications therein that a tenancy by the entirety exists in such surplus moneys is answered by the reasoning in Franklin Sq. Nat. Bank v. Schiller, holding to the contrary.” (Citations omitted)
I realize that the court’s comments about Germania, Stretz and Franklin Sq. Nat. Bank were only dicta. However, the conclusion reached in Franklin Sq. Nat. Bank was expressly approved, and I feel that if the Court of Appeals were to rule today on the question presented herein, it would hold that a surplus money fund created by a foreclosure sale of real property is personalty, and not realty.
This conclusion is reinforced by two cases decided after Hawthorne: College Point Sav. Bank v Tomlinson (42 Misc 2d 1061) and Sasario v Calo (63 Misc 2d 534) both of which held that the expression of policy contained in Hawthorne com *695 pelled the same result I have reached here. I am aware that one court, Security Trust Co. of Rochester v Miller (72 Misc 2d 269) came to the opposite conclusion, holding that the comments in Hawthorne relating to Germania and Franklin Sq. Nat. Bank were strictly dicta and did not indicate an intent to overrule the Germania line. I respectfully disagree.
On the basis of all the foregoing, the instant motion to confirm the referee’s report is granted.