In RE: FORECLOSURE OF DEED OF TRUST RECORDED IN BOOK 911, AT PAGE 512, CATAWBA COUNTY REGISTRY

No. 8025SC309

(Filed 16 December 1980)

1. **Mortgages and Deeds of Trust § 33.1; Husband and Wife § 15— property held as tenants by entirety — foreclosure and sale — proceeds held as entirety property**
      When husband and wife voluntarily sell and convey real property owned by

### In re Foreclosure of Deed of Trust

them as tenants by the entirety, the proceeds of sale are considered personal property, and the husband and wife are tenants in common with respect to the ownership of the proceeds of the sale; however, when real property held by husband and wife as tenants by the entirety is foreclosed and sold pursuant to a power of sale in a deed of trust, the funds so generated retain the characteristics of the underlying property and are thus constructively held by the entirety. The claim of the I.R.S. in this case was a lien only against property owned solely by the husband, and the I.R.S. had no lien against the land which was the subject of the foreclosure since it was entirety property.

2. **Mortgages and Deeds of Trust § 25— foreclosure and sale under power of sale — transaction not voluntary**

   A foreclosure and sale pursuant to a power of sale in a deed of trust is not voluntary.

3. **Mortgages and Deeds of Trust § 33.1— provision for foreclosure by exercise of power of sale — no intent that proceeds be held as tenants in common**

   Language in a deed of trust providing that the surplus proceeds from a foreclosure sale could be paid "to the Grantors, or either of them, or to their legal representatives" did not indicate that the parties intended that the surplus proceeds on the occasion of foreclosure were to be held by them as tenants in common.

Judge VAUGHN dissenting.

APPEAL by the United States of America, on behalf of its agency, the Internal Revenue Service, from *Collier, Judge.* Judgment entered 20 December 1979, in Superior Court, CATAWBA County. Heard in the Court of Appeals 6 October 1980.

On 18 May 1979, William J. Houch, Substituted Trustee under a deed of trust recorded in Book 911 at page 512 of the Catawba County Registry, foreclosed and sold at private sale real property conveyed by the deed of trust in accordance with a power of sale contained therein. The owners in default of the real property were Frank S. Cline and Sally S. Cline, husband and wife, who held the property as tenants by the entirety. The property brought $30,000 at the sale. After payment of the note secured by this deed of trust and the expenses arising from the sale of the property, the substituted trustee deposited the remaining fund, $16,430.02, with the Clerk of Superior Court of Catawba County in accordance with G.S. 45-21-31 (b).

This action was originally instituted by North Carolina National

---

**In re Foreclosure of Deed of Trust**

---

Bank, the holder of a promissory note secured by a second deed of trust on this property. North Carolina National Bank brought this action to have the court determine the correct disposition of the surplus monies deposited with the clerk. Because the surplus was insufficient to pay all of the judgment creditors and lienholders in full, it was necessary for the court to determine the order of priority among the lienholders claiming an interest in the surplus.

There were several judgment creditors and lienholders of record brought in as defendants who claimed an interest in the surplus. Most of these claims were based upon debts owed jointly by the husband and wife. However, one of defendants, the United States Department of Treasury (I.R.S.), claimed its share of the proceeds by virtue of its tax lien against Frank S. Cline, individually. This lien in the amount of $12,883.85 was filed by the I.R.S. on 9 April 1976.

Judge Collier filed his initial judgment in this matter on 23 October 1979. He determined that the surplus proceeds from the foreclosure sale stood in the stead of the land, itself, in respect to the liens thereon. In other words, the surplus held by the clerk constructively retained the characteristics of the tenancy by the entirety. As a result of this disposition the I.R.S. received nothing despite the fact that its judgment was docketed prior to that of two other defendants, Northwestern Factors, Inc., and Conover Foam and Fiber Corporation, who both received a portion of their claims.

The I.R.S. appealed from this judgment. However, the court set aside its judgment of 23 October 1979 on motion of the I.R.S., because the I.R.S. had not received proper notice of the original hearing. Before the second hearing in this matter, the I.R.S. stipulated that it did not object to the disbursement of funds in accordance with the judgment entered 23 October 1979 insofar as it related to all other defendants with the exception of Northwestern Factors, Inc., and Conover Foam and Fiber Corporation.

The court entered its final judgment in this matter on 20 December 1979. The court held in accord with its initial judgment that the characteristics of the tenancy by the entirety were transferred from the real property to the surplus. It held that the claim of the I.R.S. was a lien only against property owned solely by Frank S. Cline, and it was not a lien against property held by the entirety. The I.R.S. had no lien against the land which was the subject of the foreclosure, by

virtue of its being entirety property. Therefore, it had no lien against the surplus proceeds which would have any priority over the other creditors holding liens against the land which were transferred to the surplus. The I.R.S. received nothing on its claim.

On 3 January 1980, the I.R.S. mailed its notice of appeal from the judgment of 20 December 1979. This appeal was taken late because the I.R.S. did not receive notice of the entry of final judgment in this cause until 2 January 1980. On 6 February 1980, we allowed the petition for a writ of certiorari filed by the I.R.S.

*M. Carr Ferguson, Assistant Attorney General, Gilbert E. Anderews, Daniel F. Ross, and Donald B. Susswein, For the Tax Division, Internal Revenue Service, for appellant United States of America.*

*E. James Moore for appellee Northwestern Factors, Inc.*

MORRIS, Chief Judge

**[1]** The I.R.S. presents the novel question of whether funds generated by the foreclosure and sale of real property pursuant to a power of sale contained in a deed of trust conveying that property retain the characteristics of the underlying property and are thus constructively held by the entirety, or whether the tenancy by the entirety is terminated and the proceeds take on the characteristics of property held by tenants in common. The I.R.S. contends that when real property held by husband and wife as tenants by the entirety is foreclosed and sold pursuant to a power of sale in a deed of trust, the characteristics of the tenancy by the entirety come to an end, and the surplus funds resulting from the sale are held by the husband and wife as tenants in common. Under this theory the I.R.S. contends that through its tax lien against Frank S. Cline, individually, it would be entitled to one-half of the amount remaining of the surplus after payment of the other judgment creditors and lien-holders with chronological priority. This would give the I.R.S. a valid lien and place it before both Northwestern Factors, Inc., and Conover Foam and Fiber Corporation in the line for payment of debts secured by liens on the property.

The distinctive properties and incidents of an estate by the entirety are set forth by Justice Stacy in *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566 (1924). *See also:* J. Webster, *Real Estate Law in North Carolina* § 102, § 114-117 (1971). The tenancy by the entirety had its origin in the common law fiction that the husband and wife repres-

ented one entity. By virtue of the right of survivorship, which is the most distinguishing feature of this tenancy, the entire estate is vested in both the husband and wife simultaneously. Each spouse is deemed to be seized of the whole. The husband and wife are two natural persons, but they are treated by the law as one person. Upon the death of either spouse, the survivor automatically takes the entire estate. There is a change in the properties of the legal person holding the estate, but there is no alteration in the properties of the estate held.

It is basic law that neither the individual creditors of the husband nor the individual creditors of the wife can reach entirety property by execution upon a judgment procured against either spouse alone. However, joint creditors of both spouses can procure a judgment against both the husband and wife on a joint obligation, and the judgment will become a lien on land held by them as tenants by the entirety. This is why lenders and creditors so often compel husband and wife to execute obligations as co-makers. *Martin v. Lewis,* 187 N.C. 473, 122 S.E. 180 (1924); *see: Bank v. Corbett,* 271 N.C. 444, 156 S.E. 2d 835, (1967); *Edwards v. Arnold,* 250 N.C. 500, 109 S.E. 2d 205 (1959); J. Webster, *Real Estate Law in North Carolina* § 115 (1971).

North Carolina has adopted the tenancy by the entirety and all of the incidents and properties appurtenant thereto. The right of survivorship is the single most important characteristic of this manner of holding property. The I.R.S. is asking us in the case *sub judice* to abolish a significant part of the effectiveness of the right of survivorship as it relates to the tenancy by the entirety. This we are not willing to do.

Although North Carolina recognizes the right of husband and wife to hold real property as tenants by the entirety, it does not in general recognize the tenancy by the entirety in personal property. *Wilson v. Ervin,* 227 N.C. 396, 399, 42 S.E. 2d 468, 470 (1947), and cases cited therein. When husband and wife voluntarily sell and convey real property owned by them as tenants by the entirety, the proceeds of sale are considered personal property. Therefore, the husband and wife are tenants in common with respect to the ownership of the proceeds of the sale. *Shore v. Rabon,* 251 N.C. 790, 793, 112 S.E. 2d 556, 559 (1960), and cases cited therein; *Wilson v. Ervin, supra.* Generally, proceeds from a *voluntary* sale of real property held by the entirety are held by the husband and wife as tenants in common.

The I.R.S. bases its argument upon this rule of law. They contend that a foreclosure sale, like that of the instant case, is a voluntary conversion of realty into personalty. Therefore, the proceeds should be held by tenancy in common. This would give them a right to participate in the disposition of the surplus. The I.R.S. contends that this foreclosure sale pursuant to a power of sale is voluntary because "the Clines jointly and voluntarily executed a deed of trust encumbering the property, and the Clines were in no way *legally* prevented from paying the debt secured by the deed of trust."

The above stated rule upon which the I.R.S. relies applies to *voluntary* but not *involuntary* conversions of real property held by the entirety. A different rule prevails in North Carolina when the transfer of property held by the entirety is involuntary. The cases hold that the funds received from the involuntary conversion of the underlying real property constructively retain the characteristics of property held by the entirety.

*Highway Commission v. Myers,* 270 N.C. 258, 154 S.E. 2d 87 (1967), involved an involuntary taking of real property held by the entirety. The North Carolina State Highway Commission, implementing the State's power of eminent domain, condemned a right of way for highway purposes over a portion of the real property owned by Irvin J. Myers and wife, Sarah V. Myers, as tenants by the entirety. Pursuant to this condemnation the Commission deposited with the Clerk of Superior Court $10,455 as compensation for the land taken.

At the time of this condemnation Irvin J. Myers and his wife were separated, but not divorced. A dispute arose between the estranged couple over the proper disbursement of the proceeds from the condemnation. On appeal from an order of the Superior Court the State Supreme Court considered the question of whether Mrs. Myers was entitled to a distribution of any part of the $10,455 deposit. In his opinion in which he found the deposit was held by the entirety, Justice Bobbitt stated:

> Upon the filing of the complaint and the declaration of taking and deposit in court, the title and the right to immediate possession of the portion of the Myers property within the right of way of said project vested in the Commission. G.S. 136-104. Voluntary action by the owner is not involved. The question for decision is whether such involuntary transfer of title effected by the condemnation proceeding

operates to destroy or dissolve the estate by the entirety as if the condemned portion of the Myers property had been sold and conveyed by the voluntary joint acts of the owners thereof. Specifically, is the compensation paid by the Commission for the appropriated property constructively real property, owned by husband and wife as tenants by the entirety, or personal property owned in equal shares by husband and wife?

Unless otherwise provided by their joint and voluntary agreement, and in the absence of an absolute divorce, we are of opinion and so decide that such involuntary transfer of title does not destroy or dissolve the estate by the entirety in respect of the appropriated portion of the Myers land, and that the compensation paid by the Commission therefore has the status of real property owned by husband and wife as tenants by the entirety.

270 N.C. at 262, 154 S.E. 2d at 90.

Similarly, in *Perry v. Jolly,* 259 N.C. 305, 130 S.E. 2d 654 (1963), the North Carolina Supreme Court declared that the proceeds from the sale of real property held by husband and wife constructively retained the characteristics of the real property where the wife was incompetent. The court reasoned that the wife's disability made the sale of the property involuntary. Therefore, the resulting proceeds were not held by the couple as tenants in common.

In *Perry,* the petitioner's wife, Florence Johnson Perry, had previously been adjudged incompetent. Her husband, the petitioner, instituted a special proceeding to have the court authorize the private sale of certain farm land owned by him and his wife as tenants by the entirety. Mrs. Perry's guardian objected to the sale. However, the sale was carried out and confirmed by the Superior Court. After the entry and approval of this confirmatory decree, W. H. Perry as attorney in fact for the petitioner appealed from the sale alleging among other things that the sale had destroyed the tenancy by the entirety. In answer to this issue the Supreme Court through Justice Higgins stated:

(2) The sale does not destroy or separate the interests of the tenants by the entirety if one of the parties is incompetent.

> The right of survivorship is transferred to the fund. A divorce will convert tenancy by entirety into a tenancy in common. A *voluntary* sale will work a conversion of the land into personalty to be held as other personalty. *Wilson v. Ervin,* 227 N.C. 396, 42 S.E. 2d 468. However to be voluntary, the sale must be made by both husband and wife. Both must be *sui juris.* If one is incompetent, a sale cannot be the voluntary act of both. When the court finds it necessary for the good of the parties to require a sale, it is necessary that a good title pass to the purchaser. However, the right of survivorship is transferred to the fund to be held in the manner hereinafter discussed.

259 N.C. at 314, 130 S.E. 2d at 661. For cases from other jurisdictions holding that surplus money arising in foreclosure sale of entirety property is constructively entirety property, see 64 A.L.R. 2d 8, 60 (1959). *See also* In re Castillian Apartments, 281 N.C. 709, 190 S.E. 2d 161 (1972).

**[2]** The I.R.S. recognizes the import of our decisions with regard to involuntary conversions of entirety property. However, they contend that a foreclosure and sale pursuant to a power of sale in a deed of trust is voluntary. In support of their argument the I.R.S. cites two cases from sister jurisdictions, *Nat. Bank & Trust Co. of Norwich v. Richard,* 57 App. Div. 2d 156, 393 N.Y.S. 2d 801 (3d Dept. 1977), and *Fort Lee Savings & Loan Association v. Li Butti,* 55 N.J. 532, 264 A. 2d 33 (1970) *rev'g.* 106 N.J. Super. 211, 254 A. 2d 804 (App. Div. 1969), both of which hold that surplus money remaining after foreclosure of a mortgage on an estate held by the entirety becomes personal property held by the owners as tenants in common.

In *National Bank and Trust Company of Norwich,* supra, the New York Supreme Court relied on the prior case of *Hawthorne v. Hawthorne,* 13 N.Y. 2d 82, 242 N.Y.S. 2d 50, 192 N.E. 2d 20 (1963). *Hawthorne* held that proceeds from a contract of fire insurance covering entirety property, which were payable to husband and wife, were held by them as tenants in common rather than as tenants by the entirety. There is a vital distinction between the facts of *Hawthorne* and those of the present case.

*Hawthorne* dealt with the question of the proper distribution of fire insurance proceeds on a building which had been destroyed by

---

---

fire. This building was situated on land held by husband and wife as tenants by the entirety. The underlying real property itself was never transferred, but remained in the ownership of the husband and wife. *Hawthorne* did not deal with the proper disposition of the surplus resulting from the foreclosure and sale of the underlying real property. The disputed funds resulted solely from the terms of an insurance contract.

A prior North Carolina case has limited the applicability of the *Hawthorne* reasoning to cases involving insurance proceeds on buildings when the land itself is never transferred.

In *Forsyth County v. Plemmons,* 2 N.C. App. 373, 163 S.E. 2d 97 (1968), a dispute arose between a separated husband and wife over the disbursement of fire insurance proceeds resulting from the destruction of a building situate upon land owned by them as tenants by the entirety. This Court held, as did the *Hawthorne* Court, that the fire insurance proceeds were not the product of an involuntary conversion. Therefore, they were held by the husband and wife as tenants in common. As in *Hawthorne,* there was no transfer of the underlying real property. In his opinion, Judge Parker was careful to distinguish this result from that which would occur if the disputed fund had arisen from the transfer of the real property rather than from the fire insurance proceeds. Judge Parker stated:

> In the present case the insurance proceeds do not result from any transfer of title, voluntary or involuntary. The land is still owned by the husband and wife in exactly the same manner as before the fire. The disputed funds result solely from the terms of the contract of insurance. Under this contract the insurance company, in consideration of the premium paid to it, has assumed specified risks and has agreed to pay money to the parties insured upon the happening of certain events. Such a policy is a personal contract, appertaining to the parties to the contract and not to the thing which is subject to the risk insured against. 29 Am.Jur., Insurance, § 183, p. 575. Proceeds payable thereunder when an insured loss occurs take the place of the building destroyed only in the sense of being a thing of like value, not necessarily of like ownership.

*Forsyth County v. Plemmons,* supra, at 375, 164 S.E. 2d at 99.

---

**In re Foreclosure of Deed of Trust**

---

The distinction drawn by Judge Parker in *Plemmons* is clearly correct and valid. We cannot agree with the reasoning of the New York Supreme Court in *National Bank and Trust Company of Norwich* which applied the reasoning of *Hawthorne* with respect to fire insurance proceeds to the disposition of the surplus resulting from the foreclosure sale of real property.

Nor are we willing to follow *Fort Lee Savings & Loan Association v. Li Butti,* 55 N.J. 532, 264 A. 2d 33 (1970) *rev'g.* 106 N.J. Super. 211, 254 A. 2d 804 (App. Div. 1969), relied on by the I.R.S. There the Supreme Court of New Jersey reversed the judgment of the Appellate Division and held that a judgment creditor of a husband was entitled to payment of his judgment out of the surplus monies received upon the foreclosure sale of realty held by husband and wife by the entirety. In so doing the Court reversed a long line of New Jersey cases which had held that surplus funds resulting from a sale under a mortgage foreclosure of realty were deemed not to be converted into personalty, but continued to maintain their classification as realty held by the entirety. *See Danes v. Smith,* 30 N.J. Super, 292, 104 A. 2d 455 (App. Div. 1954); *Vineland Savings & Loan Ass'n. v. Felmey,* 12 N.J. Super. 384, 79 A. 2d 714 (Ch. Div. 1950); *Morris v. Glaser,* 106 N.J. Eq. 585, 151 A. 766 (Ch. 1930); *Servis v. Dorn,* 76 N.J. Eq. 241, 76 A. 246 (Ch. 1909). The court's *per curiam* opinion in *Fort Lee Savings and Loan Ass'n. v. Li Butti,* 55 N.J. 532, 264 A. 2d 33 (1970), adopted for its reasoning the dissenting opinion of Judge Carton in *Fort Lee Savings and Loan Ass'n. v. Li Butti,* 106 N.J. Super. 214, 254 A. 2d 804 (App. Div. 1969). As in *National Bank and Trust Company of Norwich* the chief authority upon which Judge Carton rests his dissent is *Hawthorne.*

The I.R.S. argues that this foreclosure sale of real property was voluntary because it was pursuant to a power of sale provision which was voluntarily executed by the borrowers. The foreclosure and sale were steps in a process entirely consensual in origin and nature.

Theoretically, the I.R.S.'s argument may have some validity, but, practically, it cannot be said that the execution of a deed of trust with a power of sale provision and the subsequent implementation of that provision by the trustee are anything but involuntary. Typically, a deed of trust securing a note is a form deed which contains somewhere in the fine print the power of sale. Often the power of sale provision is not negotiable, but is a term which must be accepted by

individual borrowers seeking a loan. The power of sale provision is placed in deeds of trust executed today, because it is so advantageous to the note holder. It allows the note holder to call upon the trustee to sell the property if default occurs without the necessity of a lawsuit which would be costly in terms of time and expense. The power of sale is simply a speedy and inexpensive way to obtain the equivalent results of a judicial foreclosure. Surely, it is unreasonable to say that borrowers have a choice between executing a deed of trust with a power of sale provision or one without. It is even more unreasonable to say, as does the I.R.S., that the borrowers' failure to keep up their payments resulting in default and foreclosure is voluntary. The borrowers' default on their note and the subsequent foreclosure and sale of the realty securing the note are obviously involuntary.

[3] Finally, the I.R.S. argues that the actual wording of the power of sale provision contained in the deed of trust in the present case proves that the parties intended that the surplus proceeds on the occasion of foreclosure were to be held by them as tenants in common. The critical language provides that the surplus proceeds from a foreclosure sale could be paid, "to the Grantors, *or either of them,* or to their legal representatives." (Emphasis added.)

The quoted phrase is mere boiler-plate found in the usual form deed of trust. This particular language would have appeared unchanged in the form deed of trust no matter the capacity in which the grantors held the subject property. The language is deliberately worded in the alternative so that it can apply no matter whether the grantors hold the property as tenants in common, tenants by the entirety, or joint tenants.

Further, this language hardly fits the characteristics of the tenancy in common. "In a tenancy in common the tenants 'hold by several and distinct titles but by unity of possession.' That is to say, each tenant in common owns a separate undivided interest in the land in his own right and each has an equal right to possession. Unity of possession is the only requisite unity - the tenants own distinct moities in the land." J. Webster, *Real Estate Law in North Carolina* § 101 (1971). The language contained in this deed of trust, which is emphasized by the I.R.S., *"or either of them"*, is inconsistent with this definition of a tenancy in common. The quoted language uses the word "either" which can be interpreted to mean that one or the other of the

grantors could be given the entire surplus of a foreclosure sale. A tenancy in common would require that each tenant be entitled only to the share of the surplus proceeds which was proportional to his share of ownership in the real property. Under this quoted language either tenant could receive the whole surplus. Therefore, this language does not indicate that the grantors only intended that any surplus be held by them in common.

North Carolina has adopted the tenancy by the entirety as one method by which husband and wife may hold real property. The tenancy takes its origin from the common law when husband and wife were regarded as one person, and a conveyance to the two persons was regarded in law as a conveyance to one person.

> The estate rests upon the doctrine of the unity of person, and, upon the death of one, the whole belongs to the other, not solely by right of survivorship, but also by virtue of the grant which vested the entire estate in each grantee. *Long v. Barnes,* 87 N.C., 329; *Bertles v. Nunan,* 92 N.Y., 152. These two individuals, by virtue of their marital relationship, acquire the entire estate, and each is deemed to be seized of the whole, and not of a moiety or any undivided portion thereof. They are seized of the whole, because at common law they were considered but one person; and the estate thus created has never been destroyed or changed by statute in North Carolina. *Freeman v. Belfer,* 173 N.C., 587. It still possesses here the same properties and incidents as at common law. *Bynum v. Wicker,* 141 N.C., 95. The act abolishing survivorship in joint tenancies in fee (C.S., 1735) does not apply to tenancies by the entirety. *Motley v. Whitemore,* 19 N.C., 537. A joint tenancy is distinguished by the four unities of time, title, interest, and possession (*Moore v. Trust Co.,* 178 N.C., p. 124); and it has been held that in tenancies by the entirety, a fifth unity is added to the four common-law unities recognized in joint tenancies, to wit, unity of person. *Topping v. Sadler,* 50 N.C., 357.

*Davis v. Bass,* 188 N.C. 200, 203, 124 S.E. 564, 567-68 (1924).

The right of survivorship, one of the most important incidents of the death obtains because the whole estate belongs to the survivor by right of purchase under the original grant, because each tenant was

In re Foreclosure of Deed of Trust

seized of the whole from the beginning, and the tenant who died owned no estate which was descendible or divisable. Neither tenant can sever the union of interest so as to destroy the right of survivorship without the consent of the other. To hold as the I.R.S. contends would effectively destroy the right of survivorship without the consent of either party. This we are not willing to do. We, therefore, hold that the surplus remaining after the foreclosure and sale pursuant to a power of sale in a deed of trust of real property held by husband and wife as tenants by the entirety constructively retains the characteristics of the real property and is held by or for the benefit of the husband and wife as tenants by the entirety.

Affirmed.

Judge WELLS concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting:

The issue is whether surplus proceeds from the foreclosure sale of realty held as tenants by the entirety may be constructively deemed to be entirety property even though such proceeds are personalty. The majority holds that such proceeds take on an entirety character because they are created by an involuntary conversion of realty held by the entirety. The result is that an individual judgment creditor of the husband may not enforce its claim against the proceeds since entirety property is only subject to claims upon a joint obligation of the husband and wife. I respectfully urge that a contrary conclusion and result are dictated by an analysis of the common law features of a tenancy by the entirety, the nature of the conversion occurring at a foreclosure sale due to a default on a joint obligation, and the relevant case law of this State.

North Carolina is a "strong" tenancy by the entirety state. 47 N.C. L. Rev. 963 (1969). Our courts have long held that the estate exists as it did at common law and that it has not been changed by any statute or constitutional provision (married women property acts). *Bank v. Hall,* 201 N.C. 787, 161 S.E. 484 (1931); *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566 (1924); *Dorsey v. Kirkland,* 177 N.C. 520, 99 S.E. 407 (1919); *Bynum v. Wicker,* 141 N.C. 95, 53 S.E. 478 (1906). The most distinctive characteristic of the tenancy by the entirety is the requirement that the property so held must be realty in which the unities of time, title, interest, possession and person (husband and wife) simultaneously exist for the duration of the estate. *See* Webster, *Real Estate*

*Law in North Carolina* § 102 (1971); 4A Powell, *The Law of Real Property* 620 (1979); 4 Thompson, *The Modern Law of Real Property* § 1784 (Grimes ed. 1979). Thus, the rule is that when a husband and wife jointly sell entirety property, the cash proceeds thereof are held by them as tenants in common. *Wilson v. Ervin,* 227 N.C. 396, 42 S.E. 2d 468 (1947). Such a conclusion is necessarily compelled at common law since a sale destroys the unities of title and possession, and the property taken in exchange (the cash) is personalty.

A decision imprinting these surplus proceeds with an entirety character is, therefore, inconsistent with basic common law in two major respects. First, the foreclosure sale is still a sale, and as such, it destroys the unities of title and possession required for the existence of a tenancy by the entirety. The land foreclosed upon now belongs to another, and the Clines have no claim whatsoever to it. Second, the surplus proceeds produced by the foreclosure sale are obviously personalty, not realty, and the common law did not recognize a tenancy by the entirety in personalty. *Turlington v. Lucas,* 186 N.C. 283, 119 S.E. 366 (1923); *Moore v. Trust Co.,* 178 N.C. 118, 100 S.E. 269 (1919) (concurring opinion, Clark, C.J.).

The majority, nevertheless, concludes that a foreclosure sale is an involuntary conversion of entirety realty into personalty. The involuntary conversion theory creates an exception to the general rule that there can be no tenancies by the entirety in personalty. This exception, however, has only been recognized in two situations: *Highway Commission v. Myers,* 270 N.C. 258, 154 S.E. 2d 87 (1967) (proceeds awarded for condemnation of entirety realty are held by the entirety); and *Perry v. Jolly,* 259 N.C. 305, 130 S.E. 2d 654 (1963) (proceeds from the sale of entirety realty are held by the entirety when the wife is incompetent) [*accord,* In re Estate of Fox, 67 Misc. 2d 470, 324 N.Y.S. 2d 434 (Surr. Ct. 1971)].

Both *Perry* and *Myers* are inapposite here. In *Perry, supra,* the wife was unable to do a voluntary legal act, that of joining in the sale of the entirety property, because of her incompetence. Therefore, any sale of the property, was necessarily involuntary as to her which certainly justified the protective retention of the tenancy by the entirety as to the proceeds. In *Myers, supra,* the sole cause of the conversion of the realty into personalty was an official act of the state pursuant to its eminent domain powers. The husband and wife simply

did not do anything. Since the act of condemnation did not involve any voluntary action by the owners, the Court held that the "involuntary appropriation [by the Commission] does not destroy the tenancy by the entirety, but merely transfers the rights of the tenants from the land to the funds." 270 N.C. at 263, 154 S.E. 2d at 90. In this case, however, the Clines contributed to the event of a foreclosure sale by their joint execution of the deed of trust and their failure to make payments upon that joint obligation. Moreover, the involuntary conversion exception does not apply to every situation where the triggering event of the conversion is arguably involuntary. *See Forsyth County v. Plemmons,* 2 N.C. App. 373, 163 S.E. 2d 97 (1968) (discussed *infra*).

An instructive analogy here is to cases involving the award of fire insurance proceeds for the loss of entirety realty. In *Hawthorne v. Hawthorne,* the New York Court of Appeals refused to apply the involuntary conversion exception to fire insurance proceeds of entirety realty and stated:

> If the insurance proceeds are the logical substitute of anything they are the fruit of the insurance contract and the premiums paid under it. In sum, while the *loss* was involuntary, the draft is not a substitute forced on the parties equally involuntarily [as in the condemnation cases]; it is the product of their voluntary contractual act and is held by them in the same way as any personal property voluntarily acquired.

13 N.Y. 2d 82, 85, 242 N.Y.S. 2d 50, 52 (1963). The rule in *Hawthorne,* that the involuntary loss must be the source of the funds received, severely restricts the involuntary conversion exception, and it is doubtful that the theory has any application beyond eminent domain proceedings. 28 Albany L. Rev. 319 (1964); 49 Cornell L.Q. 559 (1964).

This Court adopted the reasoning of *Hawthorne, supra,* in *Forsyth County v. Plemmons,* 2 N.C. App. 373, 163 S.E. 2d 97 (1968). Both *Hawthorne* and *Plemmons* hold that fire insurance proceeds from entirety realty are held by the husband and wife as tenants in common. In addition, the Courts, in both cases, gave much weight to the prohibition against tenancy by the entirety in personalty and expressly found that the condemnation cases were not controlling.

It is not unusual for the permanent improvements on real estate

to exceed the value of the underlying land many times over. In every case, the improvements represent a part of the total value of the realty or they would not be insured. A fire, therefore, converts a substantial part of the value of the realty into personalty in the form of insurance proceeds. The conversion by fire is an involuntary event as far as the owners are concerned. It would seem that a much more persuasive argument could be made for the proposition that, where the value of realty is converted into personalty by fire, the insurance proceeds should take on the attributes of that which they replace, rather than here where the conversion to personalty is triggered by the voluntary execution of a conveyance in trust. I do not believe, therefore, that *Plemmons, supra,* limited the applicability of the reasoning in *Hawthorne v. Hawthorne,* 13 N.Y. 2d 82, 242 N.Y.S. 2d 50 (1963), to those cases involving fire insurance proceeds for a building where title to the unimpaired realty, the bare land, is not transferred.

I also fail to see how the events leading up to a foreclosure can be characterized as involuntary. The parties make several critical choices: among them, whether to own real estate, what kind of estate will be used to hold the title, whether to encumber their title and the nature of that encumbrance. Admittedly, it is unusual for prospective purchasers to obtain much real property without some form of installment financing. It is equally true that financial circumstances may make it prudent to raise money on the security of real estate. These facts, however, do not mean that the conveyance of entirety property to a trustee pursuant to a deed of trust is anything other than a voluntary act even though the execution of the conveyance and subsequent default may be affected by a number of economic factors beyond the control of the parties.

Unlike the majority of jurisdictions which consider a mortgage to be a lien, in this State, the execution of a mortgage, or a deed of trust, constitutes a conveyance of legal title, in the nature of a determinable fee, to the mortgagee or trustee. *Gregg v. Williamson,* 246 N.C. 356, 98 S.E. 2d 481 (1957); *Simms v. Hawkins,* 1 N.C. App. 168, 160 S.E. 2d 514 (1968). Our State is, therefore, a member of a small minority adhering to a "title" or "conveyance" theory of mortgages in which the mortgagor retains only an equity of redemption, the right to have legal title restored upon satisfaction of the underlying debt. Webster, *Real Estate Law in North Carolina* §§ 228-229 (1971); Smith and Boyer, *Survey of the Law of Property* 338 (2d ed. 1971); Reeves, *Special Subjects of the Law of Real Property* §§ 459-460, at 627-28 (1904). The grantors

here merely retained the right to redeem the property from the trustee's legal title by paying the debt, a right they did not exercise.

There is substantial authority in North Carolina indicating that these surplus proceeds are not held by the entirety. In *Bruce v. Nicholson,* 109 N.C. 202, 13 S.E. 790 (1891), the plaintiff brought an action to foreclose upon two mortgages on entirety property executed by the husband and wife. An individual creditor of the husband moved to be made a party defendant in the foreclosure action to protect its judgment lien. The motion was denied because the creditor had no interest in the *land* to be foreclosed upon since it was held by the entirety. On appeal, the Supreme Court affirmed the denial of the motion because the appellants

> did *not* ask to be made a party defendant in the action *for the purpose of enforcing their supposed lien and sharing in the funds, the proceeds of the sale of the land according to their alleged right,* but for the purpose of alleging collusion between the plaintiffs and defendants to the prejudice of themselves and other creditors, and to contest the validity of the plaintiff's mortgages and debts secured by them.

109 N.C. at 206-07, 13 S.E. at 791 (emphasis added). The Court held that the creditor could not allege collusion between the parties as a defense to the foreclosure action; rather, the proper remedy was to bring an independent action on this basis. Nevertheless, it is clear that the Court assumed that the proceeds from a foreclosure sale were personalty held in common and that the husband's share thereof would be subject to the liens of his creditors in a proper proceeding.

In addition, the cases of *Porter v. Bank,* 249 N.C. 173, 105 S.E. 2d 669 (1958), and 251 N.C. 573, 111 S.E. 2d 904 (1960), cannot be ignored in the determination of the issue presented here. In the second *Porter* case (1960), the Court held that an order for alimony pendente lite in favor of the wife could not create a lien in *futuro* on the husband's share of surplus proceeds to be derived from a foreclosure sale under a deed of trust on real property owned by the couple by the entirety. Thus, the wife's claims against her husband did not have priority over an individual creditor's lien which had attached to the husband's interest in the surplus after the foreclosure sale when the trustee deposited it with the clerk. 251 N.C. at 580-81, 111 S.E. 2d at 910. In both the first and the second *Porter* cases, the Supreme Court obvious-

ly believed that the surplus proceeds from the foreclosure were held by the husband and wife as tenants in common and that the share of each was subject to the duly attached liens of their individual creditors.

Another pertinent case is *Koob v. Koob,* 283 N.C. 129, 195 S.E. 2d 552 (1973). *Koob* involved a dispute over the distribution of surplus proceeds from a foreclosure of entirety property between the husband and wife in the wife's action for alimony without divorce. Chief Justice Bobbitt recognized the holding in *Porter v. Bank,* 251 N.C. 573, 111 S.E. 2d 904 (1960): "that a creditor of defendant-husband who had levied on the husband's interest in the surplus had priority over the wife's claim under the order providing for the payment of alimony to her." 283 N.C. at 139, 195 S.E. 2d at 559. Although he did not appraise "the legal significance" of the difference in the facts in *Koob* and those in *Porter*, the Chief Justice, nonetheless, pointed out the following:

> In *Porter v. Bank,* the surplus fund of $9,382.34 was the result of the foreclosure by Frank Banzet, Trustee, of a deed of trust which had been executed by the defendant-husband and the plaintiff-wife. In the present case, the surplus fund of $25,853.23 resulted from the foreclosure by Douglas, Trustee, of a deed of trust which had been executed by Harry J. Hill and wife, Mary H. Hill, prior owners of the subject realty, and not by William M. Koob and wife, Marilyn S. Koob.

*Id.* The Court thus seems to assume that, had the deed of trust foreclosed upon been executed by the Koobs, the holding in *Porter v. Bank,* 251 N.C. 573, 111 S.E. 2d 904 (1960) would clearly control.

Apparently, one noted author has misconstrued the *Koob* case and cited it for the proposition that a foreclosure of a deed of trust is an involuntary transfer of title which causes the proceeds to retain their entirety status. *See* 2 Lee, *North Carolina Family Law* § 114, at 49 (4th ed. 1980). *Koob* does not so hold. *See Crumpton v. Crumpton,* 290 N.C. 651, 657-58, 227 S.E. 2d 587, 592 (1976). Indeed, the Court avoided the "critical question" of whether the trustee's foreclosure constituted a dissolution of the estate by the entirety by the voluntary joint acts of the husband and wife. Instead, the Court vacated the orders purporting to adjudge the respective rights to the surplus because the process served on the husband had been insufficient to confer jurisdiction for such adjudication. 283 N.C. at 142, 195 S.E. 2d at 561.

Two other jurisdictions have spurned the involuntary conversion theory as a means of avoiding the common law rule prohibiting tenancies by the entirety in personalty where surplus proceeds from a foreclosure sale upon a voluntarily executed mortgage are involved. New York and New Jersey have specifically held that such proceeds, identical to those in this case, are held in common, not by the entirety. The leading case is *Franklin Square Nat. Bank v. Schiller,* 202 Misc. 576, 119 N.Y.S. 2d 291 (Sup. Ct. 1950). *Schiller* was the first case to hold that foreclosure proceeds were held by the owners as tenants in common, and it was expressly approved as the controlling law in *Hawthorne v. Hawthorne,* 13 N.Y. 2d 82, 86, 242 N.Y.S. 2d 50, 53 (1963) [adopted by this court in *Forsyth County v. Plemmons,* 2 N.C. App. 373, 163 S.E. 2d 97 (1968)]. Two cases following the *Schiller* result are *Nat. Bank & Trust v. Rickard,* 57 App. Div. 2d 156, 393 N.Y.S. 2d 801 (3d Dept. 1977) and *Fort Lee Savings & Loan Association v. LiButti,* 106 N.J. Super. 211, 254 A. 2d 804 (App. Div. 1969), *rev'd per curiam,* 55 N.J. 532, 264 A. 2d 33 (1970). In *Rickard,* the Court explained the result by stating: "Here the giving of the mortgage, the vehicle which authorized the sale, was a voluntary act of the husband and wife and the authorized sale merely an incident in producing the fund." 57 App. Div. 2d at 158, 393 N.Y.S. 2d at 802. *Accord, Mojeski v. Siegmann,* 87 Misc. 2d 690, 386 N.Y.S. 2d 609 (Sup. Ct. 1976), *aff'd,* 57 App. Div. 2d 549, 392 N.Y.S. 2d 1021 (3d Dept. 1977). In its reversal of *Fort Lee Savings and Loan,* the New Jersey Supreme Court adopted the reasoned dissent of Judge Carton (from the lower court). 55 N.J. at 533, 264 A. 2d at 33. Judge Carton concluded that the involuntary conversion theory could not be used to impress the foreclosure proceeds with a tenancy by the entirety because

It establishes an exception to the salutary rule that tenancies by the entirety may not exist in personal property and by means of a fiction extends in a new form a type of tenancy whose values has [*sic*] been widely questioned even so far as it applies to real property.

. . .

Mortgagors, in executing mortgages, must certainly be held to have understood both that they must pay the amount which the mortgage secures and that their interest in the property may be cut off by foreclosure and sale of the property in the event of a default. The foreclosure and sale

are steps in a process entirely consensual in its origin and nature.

106 N.J. Super. at 214, 217, 254 A. 2d at 806, 807-08. *See Pulawski Savings & Loan Association v. Aguiar,* 174 N.J. Super. 42, 415 A. 2d 365 (1980). *Rickard* and *Fort Lee Savings and Loan* clearly incorporate the holding of *Hawthorne v. Hawthorne,* 13 N.Y. 2d 82, 242 N.Y.S. 2d 50 (1963), limiting the application of the involuntary conversion theory.


It is significant that New York, New Jersey and North Carolina adhere to the minority position, among entirety jurisdictions, that there can be no such tenancy in personalty. Moynihan, *Introduction to the Law of Real Property* 231 (1962). Authority from other jurisdictions, which recognize tenancy by the entirety in personalty, that foreclosure proceeds are constructive entirety property, should be disregarded for purposes of determining the issue in this State. *See Annot.,* 64 A.L.R. 2d 8, 60 (1959). In sum, the reasoned (and applicable) authority of North Carolina and other comparable jurisdictions seems to compel the conclusion that the surplus proceeds, received by the husband and wife from a foreclosure sale upon a jointly executed deed of trust for entirety realty, are personalty held in common subject to the legitimate claims of creditors against the individual tenants.

This Court should, of course, continue to protect and enforce the right of survivorship to entirety property. This incident of the tenancy does not, however, deserve such attention here where the parties jointly executed a deed of trust. The husband and wife were both responsible for making the payments. *See Wall v. Wall,* 24 N.C. App. 725, 212 S.E. 2d 238, *cert. denied,* 287 N.C. 264, 214 S.E. 2d 437 (1975). When they conveyed title to the trustee, the Clines were aware of the consequences that could follow from their failure to comply with the trust and redeem the title to the property.

Sound public policy would seem to favor a decision that would subject the husband's share of the surplus to the duly attached liens of his individual creditors. The tenancy by the entirety has been uniformly criticized on the basis of its use as a mechanism to avoid the claims of creditors. *See* Grilliot and Yocum, *Tenancy by the Entirety: An Ancient Fiction Frustrates Modern Creditors,* 17 Am. Bus. L.J. 341 (1979); 4A Powell, *The Law of Real Property* ¶ 623 (1979); Moynihan, *Introduction to the Law of Real Property* 234-35 (1962). Our own courts have criticized the tenancy often and have suggested that it be abol-

---

Cook v. Tobacco Co.

---

ished more than once. *Moore v. Trust Co.,* 178 N.C. 118, 100 S.E. 269 (1919) (concurring opinion, Clark, C.J.); *Dorsey v. Kirkland,* 177 N.C. 520, 99 S.E. 407 (1919); *Bynum v. Wicker,* 141 N.C. 95, 53 S.E. 478 (1906). It is, therefore, inappropriate to extend the estate by the entirety "at this late day" to personalty when it exists solely by virtue of common law which inflexibly recognized it only in realty. *Gooch v. Bank,* 176 N.C. 213, 97 S.E. 53 (1918).

In conclusion, I am not inadvertent to the further question concerning the distribution of these surplus proceeds among the joint creditors of the Clines and Mr. Cline's individual creditors. *See Johnson v. Leavitt,* 188 N.C. 682, 686, 125 S.E. 490, 497 (1924). The majority opinion, however, makes consideration of this issue unnecessary.